481 A.2d 1135

**Vernon Lee EVANS, Jr.**

v.

**STATE of Maryland.**

**Anthony GRANDISON, Sr.**

v.

**STATE of Maryland.**

**No. 160, Sept. Term, 1983.**
**No. 7, Sept. Term, 1984.**

Court of Appeals of Maryland.

April 4, 1984.

Opinion Oct. 3, 1984.

Mark Colvin, Asst. Public Defender, Baltimore (Alan H. Murrell, Public Defender, Baltimore, on brief), for appellant in No. 160, Sept. Term 1983.

Deborah K. Chasanow, Asst. Atty. Gen., Baltimore (Stephen H. Sachs, Atty. Gen., Baltimore, on brief), for appellee in No. 160, Sept. Term 1983.

H. Warren Crawford, Ocean City, for appellant in No. 7, Sept. Term 1984.

Dana M. Levitz, Asst. State's Atty. for Baltimore County, Towson (Stephen H. Sachs, Atty. Gen., Deborah K. Chasanow, Asst. Atty. Gen., Baltimore, on brief), for appellee in No. 7, Sept. Term 1984.

Argued before MURPHY, C.J., and SMITH, ELDRIDGE, COLE, DAVIDSON,* RODOWSKY and COUCH, JJ.

## PER CURIAM ORDER

For reasons to be stated in an opinion later to be filed, it is this 4th day of April, 1984

ORDERED, by the Court of Appeals of Maryland, that the order of the Circuit Court for Worcester County deny-

---

* Davidson, J., participated in the hearing and in the conference of the case in regard to its decision, but because of illness did not take part in the adoption of the opinion.

ing the motion to dismiss the indictment be, and it is hereby, affirmed; and it is further

ORDERED that the mandate shall issue forthwith, costs to be paid by the appellant.

## PER CURIAM ORDER

For reasons to be stated in an opinion later to be filed, it is this 4th day of April, 1984

ORDERED, by the Court of Appeals of Maryland, that the order of the Circuit Court for Somerset County denying the motion to dismiss the indictment be, and it is hereby, affirmed; and it is further

ORDERED that the mandate shall issue forthwith, costs to be paid by the appellant.

## PER CURIAM.

The issue in these cases is whether the Double Jeopardy Clause of the Fifth Amendment or the Maryland common law double jeopardy prohibition bars the present state court criminal prosecutions which arise out of the same acts for which the defendants had previously been convicted in federal court.

According to the State's allegations, Anthony Grandison, the appellant in No. 7, and Vernon Evans, Jr., the appellant in No. 160, entered into an agreement whereby Evans would kill Scott Piechowitz and his wife, Cheryl, because the couple was slated to testify against Grandison in his upcoming narcotics trial in the United States District Court. The State further alleged that Evans partially carried out the scheme, killing Scott Piechowitz and Susan Kennedy in the mistaken belief that she was Cheryl Piechowitz.

A two count indictment was filed in the United States District Court for the District of Maryland against Grandison and Evans. They were charged with conspiracy to violate the civil rights of Scott and Cheryl Piechowitz by interfering with their right to be witnesses in a judicial

proceeding, in violation of 18 U.S.C. § 241, and with witness tampering, in violation of 18 U.S.C. § 1512.

A four count indictment was subsequently filed in the Circuit Court for Baltimore County, charging Grandison and Evans with two counts of murder, one count of conspiracy to commit murder, and use of a handgun in the commission of a felony or crime of violence. The state cases were severed and removed to other counties, the prosecution of Grandison being transferred to the Circuit Court for Somerset County and the prosecution of Evans being transferred to the Circuit Court for Worcester County.

With respect to the federal charges, Grandison and Evans were tried together in the United States District Court for the District of Maryland and convicted on both counts. Each defendant was sentenced to life plus ten years imprisonment.

■ Both defendants then filed motions in the circuit courts to have the state indictment dismissed on the grounds of double jeopardy and due process.[1] The motions were heard and denied by each circuit court. The defendants took immediate appeals from those decisions,[2] and this Court granted their petitions for writs of certiorari prior to any proceedings in the Court of Special Appeals.

On appeal, the defendants presented a two-stage double jeopardy argument. First, they urged that the state charges should be deemed the same for double jeopardy

---

1. The defendants' due process argument was in substance no different from their double jeopardy argument. As shown by their trial court memoranda, as well as their briefs in this Court, the due process argument was based upon the theory that the double jeopardy prohibition was embodied in the Due Process Clause of the Maryland Constitution, which is Article 24 of the Maryland Declaration of Rights. *See Ward v. State,* 290 Md. 76, 90 n. 11, 427 A.2d 1008 (1981). Consequently, we shall not deal separately with the defendants' due process argument.

2. The denial of a motion to dismiss on double jeopardy grounds is immediately appealable. *Bowling v. State,* 298 Md. 396, 401 n. 4, 470 A.2d 797 (1984), and cases there cited.

purposes as the federal offense under 18 U.S.C. § 241.[3] Second, the defendants argued that the prosecution of the "same" offenses by different sovereigns did not remove the case from the prohibition against double jeopardy. They disputed the applicability of the so-called dual sovereignty doctrine, which allows successive prosecutions of a person, for what is essentially the same offense, if the prosecutions are by different sovereigns. The defendants contended that this doctrine was no longer viable under the Double Jeopardy Clause of the Fifth Amendment. Alternatively, they argued that the Maryland common law double jeopardy prohibition does not recognize the dual sovereignty principle.

On April 4, 1984, following oral argument, we filed *per curiam* orders, affirming the decisions of the circuit courts denying the motions to dismiss the indictment. We shall now give the reasons for our orders.

▮▮▮ We shall assume arguendo that, for double jeopardy purposes, the state indictment should be deemed to charge the same offenses as the defendants' federal convictions under 18 U.S.C. § 241.[4] Nevertheless, the fact that

---

**3.** 18 U.S.C. § 241 provides in pertinent part:

"If two or more persons conspire to injure, oppress, threaten, or intimidate any citizen in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States, or because of his having so exercised the same;

 * * * * * *

"They shall be fined not more than $10,000 or imprisoned not more than 10 years, or both; and if death results, they shall be subject to imprisonment for any term of years or for life."

**4.** Despite our assumption, it seems clear that counts one, two and four of the state indictment, alleging the substantive offenses of murder and use of a handgun in a felony or crime of violence, charged different offenses from the offense under 18 U.S.C. § 241.

As the Supreme Court pointed out in *Anderson v. United States*, 417 U.S. 211, 223, 94 S.Ct. 2253, 2262, 41 L.Ed.2d 20 (1974), "the gravamen of the offense under § 241 is conspiracy, [and] the prosecution must show that the offender acted with a specific intent to interfere with the federal rights in question." Where death results in connection with the conspiracy, homicide does not appear to be an element of the

the prosecutions are by different sovereigns removes the case from the prohibition against double jeopardy. We reject the defendants' argument that the dual sovereignty principle is inapplicable.

(a)

■ The seminal cases on dual sovereignty under the federal constitution are *Bartkus v. Illinois*, 359 U.S. 121, 79 S.Ct. 676, 3 L.Ed.2d 684 (1959), and *Abbate v. United States*, 359 U.S. 187, 79 S.Ct. 666, 3 L.Ed.2d 729 (1959). In *Bartkus*, the defendant was tried and acquitted in the United States District Court for the Northern District of

---

charge under § 241. *See United States v. Price*, 383 U.S. 787, 791, 86 S.Ct. 1152, 1155, 16 L.Ed.2d 267 (1966). Even under the language added to § 241 in 1968, providing for life imprisonment "if death results," a murder or a specific intent to kill is not an element of the offense; instead "deprivation of a constitutional right must be intended." *United States v. Purvis*, 580 F.2d 853, 857 (5th Cir.1978). *See United States v. Harris*, 701 F.2d 1095, 1101 (4th Cir.1983), *cert. denied,* —— U.S. ——, 103 S.Ct. 3554, 77 L.Ed.2d 1400 (1983) (no requirement "that the death be the direct and intended result of the violation"); *United States v. Hayes*, 589 F.2d 811, 820–822 (5th Cir.1979), *cert. denied,* 444 U.S. 847, 100 S.Ct. 93, 62 L.Ed.2d 60 (1979) (involving the identical language under 18 U.S.C. § 242); *United States v. Guillette*, 547 F.2d 743 (2d Cir.1976), *cert. denied,* 434 U.S. 839, 98 S.Ct. 132, 54 L.Ed.2d 102 (1977).

Consequently, the intent which the prosecution must prove under 18 U.S.C. § 241, is entirely different from the intent which is an element of the homicides charged in counts one and two of the state indictment. *See Newton v. State*, 280 Md. 260, 268–269, 373 A.2d 262 (1977); *Gladden v. State*, 273 Md. 383, 387–390, 330 A.2d 176 (1974). Thus, under the "same evidence" or "required evidence" test for determining whether offenses should be deemed the same for double jeopardy purposes (*see, e.g., Brown v. Ohio*, 432 U.S. 161, 166, 97 S.Ct. 2221, 2225, 53 L.Ed.2d 187 (1977), and *Thomas v. State*, 277 Md. 257, 262–267, 353 A.2d 240 (1976)), the federal indictment against Grandison and Evans did not charge the same crime as the offenses charged in counts one, two and four of the state indictment.

On the other hand, in light of the prosecution's theory of the case, the conspiracy charged in count three of the state indictment would not seem to be distinct from the charge under 18 U.S.C. § 241. *See, e.g., Greenwald v. State*, 221 Md. 245, 250–252, 157 A.2d 119, *appeal dismissed,* 363 U.S. 721, 80 S.Ct. 1599, 4 L.Ed.2d 1521 (1960); *United States v. Morado*, 454 F.2d 167, 170–172 (5th Cir.1972), *cert. denied,*

Illinois on federal bank robbery charges. Subsequent to his acquittal in federal court, the defendant was indicted, tried and convicted on state bank robbery charges arising from the same incident. The Supreme Court of Illinois, rejecting the defendant's double jeopardy argument, affirmed. In affirming the judgment of the Illinois court, the United States Supreme Court summarized its previous cases on the dual sovereignty issue, stating (359 U.S. at 131–132, 79 S.Ct. at 682–683):

"The process of this Court's response to the Fifth Amendment challenge was begun in *Fox v. Ohio* [5 How. 410, 12 L.Ed. 213 (1847)], continued in *United States v. Marigold*, 9 How. 560 [13 L.Ed. 257 (1850)], and was completed in *Moore v. Illinois*, 14 How. 13 [14 L.Ed. 306 (1852)]. Mr. Justice Grier, writing for the Court in *Moore v. Illinois*, gave definitive statement to the rule which had been evolving:

'An offence, in its legal signification, means the transgression of a law. 14 How., at 19 [14 L.Ed. 306]. Every citizen of the United States is also a citizen of a State or territory. He may be said to owe allegiance to two sovereigns, and may be liable to punishment for an infraction of the laws of either. The same act may be an offence or transgression of the laws of both. 14 How., at 20 [14 L.Ed. 306]. That either or both may (if they see fit) punish such an offender, cannot be doubted. Yet it cannot be truly averred that the offender has been twice punished for the same offence; but only that by one act he has committed two offences, for each of which he is justly punishable. He could not plead the punishment by one in bar to a conviction by the other.' *Ibid.*

"In a dozen cases decided by this Court between *Moore v. Illinois* and *United States v. Lanza* [260 U.S. 377, 43 S.Ct. 141, 67 L.Ed. 314 (1922)] this Court had occasion to

---

406 U.S. 917, 92 S.Ct. 1767, 32 L.Ed.2d 116 (1972); *United States v. Palermo*, 410 F.2d 468, 470–471 (7th Cir.1969).

reaffirm the principle first enunciated in *Fox v. Ohio.* Since *Lanza* the Court has five times repeated the rule that successive state and federal prosecutions are not in violation of the Fifth Amendment. Indeed Mr. Justice Holmes once wrote of this rule that it 'is too plain to need more than statement.' "

In *Abbate,* a companion case to *Bartkus,* the situation was reversed. The defendant there contested on double jeopardy grounds a federal prosecution following a state court conviction for essentially the same offense. Relying on most of the same cases as in *Bartkus,* the Court in *Abbate* again upheld the second conviction.

The defendants argue, however, that the dual sovereignty doctrine was in effect abrogated by the Supreme Court's decision in *Benton v. Maryland,* 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969), and that, therefore, *Bartkus* and *Abbate* are no longer viable. In *Benton v. Maryland,* the Double Jeopardy Clause of the Fifth Amendment was held to be applicable to the state prosecutions by virtue of the Fourteenth Amendment. The defendants theorize that, because the same clause of the United States Constitution now prohibits both the federal government and the state governments from placing someone twice in jeopardy for the same offense, the distinctions between the federal and state governments with regard to successive prosecutions for essentially the same crime have been erased. Nevertheless, *United States v. Wheeler,* 435 U.S. 313, 98 S.Ct. 1079, 55 L.Ed.2d 303 (1978), compels rejection of the defendants' contention. In *Wheeler,* decided after *Benton,* the Supreme Court expressly reaffirmed the dual sovereignty concept and the decisions in *Bartkus* and *Abbate.*

The viability of the dual sovereignty principle was recently reviewed by the United States Court of Appeals for the Fifth Circuit in *United States v. Hayes,* 589 F.2d 811 (5th Cir.1979), *cert. denied,* 444 U.S. 847, 100 S.Ct. 93, 62 L.Ed.2d 60 (1979). In that case the defendant Hayes was first tried in the state court for capital murder and was convicted of the lesser included offense of aggravated as-

sault. He was then prosecuted and convicted in the federal court for depriving a person of a right protected by the United States Constitution, in violation of 18 U.S.C. § 242. The state and federal prosecutions were based upon the same acts. In rejecting the defendant's double jeopardy argument, the Fifth Circuit summarized as follows (589 F.2d at 817–818):

"While the Court has consistently expressed concern over the possible abuses of dual prosecutions, *see Bartkus v. Illinois*, 359 U.S. 121, 138, 79 S.Ct. 676 [686], 3 L.Ed.2d 684 (1959) ('the greatest self-restraint is necessary when that federal system yields results with which a court is in little sympathy'); *United States v. Lanza*, 260 U.S. 377, 383, 43 S.Ct. 141 [143], 67 L.Ed. 314 (1922) ('in the benignant spirit' in which the federal system is administered, defendants should be subject to dual state-federal prosecutions only 'in instances of peculiar enormity'), *quoting Fox v. Ohio*, 46 U.S. (5 How.) 410, 434, 12 L.Ed. 213 (1847), and while the *Lanza-Abbate-Bartkus* doctrine has met harsh criticism, *see, e.g.*, Harrison, *Federalism and Double Jeopardy; A Study in the Frustration of Human Rights*, 17 U. Miami L.Rev. 306 (1963); Fisher, *Two Sovereignties and the Intruding Constitution*, 28 U.Chi.L.Rev. 591, 599 (1961); Grant, *The Lanza Rule of Successive Prosecutions*, 32 Colum.L.Rev. 1309, 1329 (1932), the doctrine has nonetheless been applied consistently by the Circuit Courts.... Moreover, the Supreme Court has recently reaffirmed the dual sovereignty doctrine. *See United States v. Wheeler*, 435 U.S. 313, 98 S.Ct. 1079, 55 L.Ed.2d 303 (1978) (Indian tribe and federal government are dual sovereigns); *Rinaldi v. United States*, 434 U.S. 22, 98 S.Ct. 81, 54 L.Ed.2d 207 (1977) (dictum) (dual sovereignty principle is inherent in the federal system). Unless and until the Supreme Court overturns *Abbate*, appellant's double jeopardy claim must fail."

*See United States v. Grimes*, 641 F.2d 96, 101 n. 14 (3d Cir.1981).

Thus, the Double Jeopardy Clause of the Fifth Amendment presents no obstacle to the defendants' trials in Maryland courts.

(b)

Defendants alternatively argue that the Maryland common law proscription against double jeopardy should bar the state court prosecutions, even if the federal constitution does not. The Maryland Declaration of Rights, Article 5, provides that "the Inhabitants of Maryland are entitled to the Common Law of England ... as existed on the Fourth day of July, seventeen hundred and seventy six ...." The defendants argue that, pursuant to Article 5, this Court should follow two pre-revolutionary English cases which, it is urged, support the view that successive trials by separate sovereigns would violate the common law double jeopardy prohibition.

The first case relied on is *King v. Roche*, 1 Leach 134, 168 Eng.Rep. 169 (1775). In that case, Captain Roche was indicted for the murder of John Ferguson at the Cape of Good Hope on the coast of Africa. He was tried at the Old Bailey and filed both a plea of *autrefois acquit* and a plea of not guilty. The plea of *autrefois acquit* was based on the allegation that Captain Roche had previously been acquitted of the same murder by the Supreme Court of Criminal Jurisdiction in South Africa. The court agreed that, if the jury found true the defendant's allegation of former acquittal, "that finding would be a bar." Nevertheless, the court held that both the plea in bar and the plea on the merits could not be submitted to the jury at the same time. The defendant thereupon withdrew the plea of *autrefois acquit;* the case was tried on the not guilty plea, and the defendant was acquitted. Although the decision in *Roche's Case* was based on a finding of not guilty, the report of the case does suggest that the common law double jeopardy prohibition was viewed as applicable despite the fact that the prosecutions were by different jurisdictions.

**56**

The other case relied on by the defendants is *King v. Hutchinson,* 3 Keb. 785, 84 Eng.Rep. 1011 (1685), also reported in a note to *King v. Roche, supra,* 168 Eng.Rep. at 169.[5] While some reports of the *Hutchinson* case reveal little, other reports indicate that the defendant was first charged in Portugal with murdering a Mr. Colson and acquitted. He was then arrested in England for the same murder, and, in a habeas corpus proceeding before the King's Bench, he produced a record of his acquittal in Portugal. The "Judges ... all agreed, that as he had been already acquitted of the charge by the law of Portugal, he could not be tried again for it in England." 168 Eng.Rep. at 169 n.[6]

---

**5.** The case has also been reported in several other sources, *see* n. 6, *infra.*

**6.** Justice Frankfurter, in his opinion for the Court in *Bartkus,* expressed the following view concerning *King v. Hutchinson,* 359 U.S. at 128 n. 9, 79 S.Ct. at 681 n. 9:

"It has not been deemed relevant to discussion of our problem to consider dubious English precedents concerning the effect of foreign criminal judgments on the ability of English courts to try charges arising out of the same conduct—dubious in part because of the confused and inadequate reporting of the case on which much is based, see the varying versions of *Rex v. Hutchinson* found in *Beak v. Thyrwhit,* 3 Mod. 194, 87 Eng.Rep. 124 (reported as *Beake v. Tyrrell* in 1 Show. 6, 89 Eng.Rep. 411, and as *Beake v. Tirrell* in Comberbach 120, 90 Eng.Rep. 379), *Burrows v. Jemino,* 2 Strange 733, 93 Eng.Rep. 815 (reported as *Burroughs v. Jamineau* in mos. 1, 25 Eng.Rep. 235, as *Burrows v. Jemineau* in Sel.Cas. 70, 25 Eng.Rep. 228, as *Burrows v. Jemineau* in 2 Eq.Ca.Abr. 476, and as *Burrows v. Jemino* in 22 Eng.Rep. 443), and explained in *Gage v. Bulkeley,* Ridg.Cas. 263, 27 Eng.Rep. 824."

Justice Black, in his dissenting opinion in *Bartkus,* observed (359 U.S. at 156 n. 15, 79 S.Ct. at 698 n. 15):

"In England the doctrine that a foreign acquittal is a good plea in bar seems to antedate the American Revolution. *See Rex v. Hutchinson,* as reported in *Beak v. Thyrwhit,* 3 Mod. 194, 87 Eng.Rep. 124 (1689), and *Burrows v. Jemino,* 2 Str. 733, 93 Eng.Rep. 815 (1726), but compare the report of the same case in *Gage v. Bulkeley,* Ridg.T.H. 263, 27 Eng.Rep. 824 (1744); *Rex v. Roche,* 1 Leach 134, 135n, 168 Eng.Rep. 169, 169n (1775). Cf. *Rex v. Thomas,* 1 Sid. 179, 82 Eng.Rep. 1043; 1 Lev. 118, 83 Eng.Rep. 326, 1 Keb. 663, 83 Eng.Rep. 1172 (1664); 2 Hawkins, *op. cit., supra,* note 5, at 372. *See*

 In light of the above-discussed English cases, we shall assume arguendo that, as of 1776, the Maryland common law prohibited this State from prosecuting a defendant if he had been acquitted or convicted of the same offense by another jurisdiction. But, as we have pointed out on many occasions, the common law is not static and may be changed by decisions of the Court. *Boblitz v. Boblitz,* 296 Md. 242, 274, 462 A.2d 506 (1983); *Harrison v. Mont. Co. Bd. of Educ.,* 295 Md. 442, 459–460, 456 A.2d 894 (1983); *Moxley v. Acker,* 294 Md. 47, 51–52, 447 A.2d 857 (1982); *Williams v. State,* 292 Md. 201, 217, 438 A.2d 1301 (1981); *Felder v. Butler,* 292 Md. 174, 182, 438 A.2d 494 (1981). More specifically, this Court has modified pre-1776 English common law principles in criminal cases. *Lewis v. State,* 285 Md. 705, 714–715, 404 A.2d 1073 (1979); *Pope v. State,* 284 Md. 309, 340–352, 396 A.2d 1054 (1979).

In *Worthington v. State,* 58 Md. 403 (1882), although the case did not involve a second prosecution for the same offense, this Court stated (58 Md. at 410):

> "[i]f a party has committed a crime against the laws of two States we can perceive no good reason why he should not be punished in both States; and Mr. Bishop in his work on *Criminal Law,* sec. 136, very justly says, 'to let him go free of punishment for the felony which he has committed against our laws because he had before committed a similar felony against the laws of another country, is to suffer foreign laws to suspend the action of our own.'"

Many years later the issue was again discussed by this Court in *State v. James,* 203 Md. 113, 100 A.2d 12 (1953). In *James,* the defendant was convicted in Delaware in 1950 of criminal nonsupport. Later he moved to Worcester County, Maryland, where on March 3, 1953, he was indicted for failure to support his children from September 1, 1952, to the date of the indictment. The Circuit Court for

*also Rex v. Aughet,* 26 Cox C.C. 232, 238 (C.C.A.1918); 10 Halsbury, The Laws of England (3d ed.1955), 405."

**58**

Worcester County dismissed the indictment; the state appealed, and this Court reversed. The principal ground for this Court's holding that the Maryland prosecution was not barred was that the Maryland prosecution was for a subsequent period of time. 203 Md. at 120, 100 A.2d 12. The Court, however, went on to state (*ibid.*):

> "If it be assumed that Delaware could punish the appellee for non-support from September 1, 1952 to March 3, 1953, either under the original order or by a new prosecution, the rule of double jeopardy would not bar prosecution here for violation of Maryland law. The same act may be a crime against two sovereignties, and, where it is, double jeopardy does not apply."

The Court in *James* then cited, *inter alia, Hebert v. Louisiana*, 272 U.S. 312, 47 S.Ct. 103, 71 L.Ed. 270 (1926), and *Jerome v. United States*, 318 U.S. 101, 63 S.Ct. 483, 87 L.Ed. 640 (1943), both of which were also relied upon by the Supreme Court in *Bartkus* and *Abbate. See also, Claybrooks v. State*, 36 Md.App. 295, 306–307, 374 A.2d 365 (1977).

■ Therefore this Court has adopted, as a matter of Maryland common law, the dual sovereignty concept delineated in the Supreme Court's *Bartkus* and *Abbate* cases.

■ For the foregoing reasons, the circuit courts correctly rejected the defendants' double jeopardy contention.

ELDRIDGE, Judge, concurring in part and dissenting in part.

In my view, the defendants' motions to dismiss on double jeopardy grounds were properly denied insofar as the motions related to portions of the state indictment charging crimes which were clearly distinct from the federal offense under 18 U.S.C. § 241. On the other hand, to the extent that the state indictment charged essentially the same offense as the federal indictment, the motions to dismiss should have been granted. I believe that the common law prohibition against double jeopardy precludes a second prosecution by this State if the defendant has previously been

acquitted or convicted of the same offense by another jurisdiction.[1]

The concept that successive prosecutions of the same defendant for the same offense are permissible as long as each prosecution is by a different "sovereign" was initially adopted in *United States v. Lanza,* 260 U.S. 377, 43 S.Ct. 141, 67 L.Ed. 314 (1922), as a Fifth Amendment precept, and reaffirmed in *Bartkus v. Illinois,* 359 U.S. 121, 79 S.Ct. 676, 3 L.Ed.2d 684 (1959), and *Abbate v. United States,* 359 U.S. 187, 79 S.Ct. 666, 3 L.Ed.2d 729 (1959). The doctrine was

---

**1.** While assuming for purposes of argument that the state and federal indictments charged the same offenses, the majority in a footnote indicates that counts one and two of the state indictment, relating to the substantive offenses of murder, alleged different offenses from the offense under 18 U.S.C. § 241. Without intending to express any conclusion of my own regarding this issue, I am not convinced that the "substantive" homicide charges against the defendant Grandison constituted separate offenses from the federal conspiracy charge.

The federal indictment charged that Grandison "did unlawfully, knowingly and willfully ... agree" with Evans and others to injure Scott and Cheryl Piechowitz in the exercise of the federal right to be a witness, and that as "part of the conspiracy," Grandison "solicited, induced and procured defendant Vernon Evans, Jr., to kill Scott Piechowitz and Cheryl Piechowitz to prevent them from testifying ...." The state murder charges against Grandison were not based on the theory that Grandison had been a principal in the murders. Instead, the state capital murder charges were based upon Grandison being an accessory before the fact and upon Maryland Code (1957, 1982 Repl.Vol.), Art. 27, § 413(d)(7), that "[t]he defendant engaged or employed another person to commit the murder and the murder was committed pursuant to an agreement or contract ...."

Thus, the essence of both the federal charge and counts one and two of the state charges against Grandison was that he had *entered an agreement* whereby the victims were to be killed by Evans to prevent their testimony. The federal and state charges against Grandison in these cases do not represent the traditional dichotomy between a conspiracy and the substantive offense. Under the so-called "concert of action rule" or "Wharton's rule," one cannot be prosecuted both for a substantive offense and conspiracy to commit that offense where an agreement or the participation of two persons is a necessary ingredient of the substantive offense. *Robinson v. State,* 229 Md. 503, 513, 184 A.2d 814 (1962); *Jones v. State,* 8 Md.App. 370, 376 n. 5, 259 A.2d 807 (1969).

not supported by either the English cases or by the early common law decisions in this country.[2]

The two English cases discussed in the majority opinion, as well as earlier and later English and other authorities, establish that, as a common law principle, one could not be tried a second time for an offense if he had previously been convicted or acquitted of that offense, whether or not the first prosecution was by the same or by a different jurisdiction. *See* the authorities reviewed in Grant, *The Lanza Rule of Successive Prosecutions*, 32 Colum.L.Rev. 1309, 1318–1329 (1932). *See*, in addition, Fisher, *Double Jeopardy, Two Sovereignties and The Intruding Constitution*, 28 U.Chic.L.Rev. 591, 603–606 (1961); Harrison, *Federalism And Double Jeopardy: A Study In The Frustration Of Human Rights*, 17 Miami L.Rev. 306 (1963).

Neither the General Assembly nor any holding of this Court has changed this common law principle. The two cases quoted by the majority, *Worthington v. State*, 58 Md. 403 (1882), and *State v. James*, 203 Md. 113, 100 A.2d 12 (1953), did not involve successive prosecutions for the same offense.[3] Furthermore neither those cases, nor any other

---

**2.** As Justice Black pointed out in his dissenting opinion in *Bartkus*, 359 U.S. at 159, 79 S.Ct. at 699, many of the early cases cited as supporting the doctrine did not involve successive prosecutions but dealt with essentially a question of preemption, *i.e.*, whether two different governments could make the same activity a crime. This is true of most of the early state decisions cited by the majority and the dissent in *Bartkus*. *Compare*, *e.g.*, *Commonwealth v. Fuller*, 8 Metc. 313, 317–318 (Mass.1844); *Harlan v. The People*, 1 Douglass 207, 212 (Mich.1843); *State v. Antonio*, 2 Tread. Const. 776, 788 (S.C.1816); *Jett v. Commonwealth*, 18 Grat. 933, 939, 947, 959 (Va.1867); and *State v. Randall*, 2 Aikens 89. (Vt.1827), *with Mattison v. State*, 3 Mo. 421 (1834), and *Hendrick v. The Commonwealth*, 5 Leigh 707, 713 (Va. 1834). To the extent that these early cases contained dicta on the issue, the majority of opinions took the position that successive prosecutions by the federal and state governments for the same offense would *not* be permitted. *See also Houston v. Moore*, 5 Wheat. 1, 31, 5 L.Ed. 19 (1820).

**3.** *Worthington* cited no cases to support its dictum. *James* cited *Rossberg v. State*, 111 Md. 394, 74 A. 581 (1909), and *Bloomer v. State*, 48 Md. 521 (1878). *Rossberg* was a preemption case, relating to a local government's authority, and not a case involving successive

cases in this Court to my knowledge, have ever discussed the common law authorities relating to successive prosecutions by different sovereigns.

Finally, I would not today modify the common law rule. The purposes underlying the prohibition against successive criminal prosecutions for the same offense are just as applicable regardless of whether those prosecutions are by the same or different jurisdictions. As has been pointed out, "most free countries have accepted a prior conviction elsewhere as a bar to a second trial in their jurisdiction." *Abbate v. United States, supra,* 359 U.S. at 203, 79 S.Ct. at 675 (Black, J., dissenting).

prosecutions. *Bloomer* similarly did not involve successive prosecutions of the same defendant.