640 A.2d 1104

**STATE of Maryland**

v.

**Anthony Patrick PARKER.**

**No. 144, Sept. Term, 1992.**

Court of Appeals of Maryland.

May 11, 1994.

578

580

Tarra DeShields–Minnis, Asst. Atty. Gen., argued and on brief (J. Joseph Curran, Jr., Atty. Gen., on brief), Baltimore, for petitioner.

Sherrie B. Glasser, Asst. Public Defender, argued and on brief (Stephen E. Harris, Public Defender, on brief), Baltimore, for respondent.

Argued before MURPHY, C.J., RODOWSKY, CHASANOW, KARWACKI, BELL and RAKER, JJ., and CHARLES E. ORTH, Jr.*, Judge of the Court of Appeals (Retired, Specially Assigned).

---

* Orth, J., retired, and specially assigned, participated in the hearing and conference of this case but died prior to the adoption and filing of this opinion.

KARWACKI, Judge.

In this case we review the grant of post-conviction relief on January 22, 1992, to Anthony Patrick Parker, who pleaded guilty to second-degree murder on November 10, 1983, pursuant to a plea agreement.

The facts of this case were set forth in the opinion of the Court of Special Appeals in *State v. Parker*, 93 Md.App. 597, 613 A.2d 1020 (1992):

> "After the appellee [Parker] was formally charged with murder and other related counts arising from an incident that occurred at the Coca–Cola Bottling Company in Baltimore County, a plea bargain was struck between the appellee and the prosecution and memorialized in writing. Under the terms of the agreement, the appellee was to plead guilty to one count of bank robbery in federal court and accept a sentence of twenty years, the sentence to be served in the federal correctional system. In exchange therefor, the prosecution agreed to bind itself to a recommendation that Parker not receive more than a twenty year prison term for his plea of guilty to any 'and all charges arising out of the aforementioned Coca–Cola robbery-homicide.' The prosecution also agreed to make a recommendation that Parker's Maryland sentence be made to run concurrently with his federal sentence. A clause in the written plea agreement specified that the contents of the writing represented the only agreements made between the parties.
>
> "On May 3, 1984, the appellee appeared before Judge Cullen H. Hormes in the Circuit Court for Baltimore County for sentencing upon his conviction for second degree murder. Parker was sentenced to the Maryland Division of Corrections for a period of twenty years, the sentence to run concurrently with the appellee's federal sentence.[1]

---

1. On December 1, 1983, Parker pleaded guilty to bank robbery before Judge Alexander Harvey, II in the United States District Court for the

The sentencing court stated, 'I understand the State's Attorney will make arrangements so that he will serve his time in the federal institution.'

"The prosecutor remarked that he would alert the Commissioner of Corrections that 'the time is to be served in the federal institution.' The sentencing court commented that it understood that fact to be part of the plea agreement. The court then remarked that the commitment record should perhaps reflect that the appellee's Maryland sentence was 'to be served with or at the federal institution.' The notation so appeared on the commitment records. A detainer was then lodged by the Baltimore County Police Department and forwarded to the warden of the United States Penitentiary in Leavenworth, Kansas.

"On April 1, 1991, the appellee was paroled on his federal sentence and, pursuant to the detainer lodged by the Baltimore County Police Department, was remanded to the custody of the Maryland Division of Corrections to complete the balance of his Maryland sentence. Thereafter, the appellee wrote to the Circuit Court for Baltimore County requesting that he be released from his Maryland sentence. In his response, Judge James L. Smith, Jr.[2] informed the appellee that he would have to be paroled by the Maryland parole authorities and that 'the circumstances that you have been paroled by the federal prison system, would not bind the Maryland Department of Corrections. You would still have to be paroled by the Maryland authorities on the concurrent sentence which Judge Hormes imposed.'[3]

District of Maryland. Judge Harvey sentenced him to 20 years in the federal correctional system.

2. In the interim between Parker's sentencing by Judge Hormes and Parker's parole on his federal sentence, Judge Hormes died and was succeeded by Judge Smith.

3. Parker was denied parole by the Maryland Parole Commission after a hearing on June 27, 1991.

"In response to the appellee's filing a petition for post-conviction relief, a hearing was conducted. At the hearing, the appellee maintained that, because Judge Hormes indicated that the appellee's concurrent Maryland sentence was to be served in federal prison, the sentencing judge necessarily intended that when Parker was paroled upon his federal sentence he would thereby be paroled from his Maryland sentence. The appellee admitted, however, that Judge Hormes never once stated to him that upon completion of his federal sentence he would not be obligated to complete the balance of his Maryland sentence, should there be any time left to serve on the Maryland sentence. The hearing concluded with the post-conviction hearing judge holding the matter *sub curia* until review of the transcript of the original sentencing proceeding could be had.

"The post-conviction hearing court subsequently granted the appellee's petition for relief, ordering the State to release the appellee from the custody of the Division of Corrections."

93 Md.App. at 599–601, 613 A.2d at 1021–22 (footnote omitted).

The State appealed the ruling of the post-conviction court to the Court of Special Appeals, contending that the lower court misconstrued the legal effect of multijurisdictional sentences. The State maintained that the concurrent nature of the state and federal sentences did not require that the two sentences also be coterminous. The Court of Special Appeals disagreed, and in affirming the post-conviction hearing court's judgment, it relied on *Gantt v. State*, 81 Md.App. 653, 569 A.2d 220 (1990), as had the hearing court. On the basis of *Gantt*, the intermediate appellate court in the instant case reasoned that "parolees, though released from federal confinement, are still serving their prison term 'on the outside'" and concluded:

"[Parker's] federal sentence ends when his parole ends, which happens to be coterminous with his Maryland sen-

tence. In short, because [Parker's] term of parole from his federal sentence is twenty years and his Maryland sentence was to run concurrently to his federal term, serving the balance of his twenty years on parole will satisfy his Maryland sentence."

*Parker*, 93 Md.App. at 603, 613 A.2d at 1023. From this decision, the State sought certiorari from this Court. We granted the State's petition on February 11, 1993, and we will reverse the judgment of the Court of Special Appeals.

I

■ Before turning to the merits of the case, we must first address a motion to dismiss filed by Parker. In his motion, Parker advised us that he was found to have violated the conditions of his federal parole. His parole was revoked in August, 1993, and he is currently incarcerated in a federal prison in Georgia.[4] Parker asserts that because the sole issue before this Court is the effect of his federal parole on his concurrent Maryland sentence, the revocation of parole renders the matter moot. We do not agree.

■ We have stated often that the test for mootness is "whether, when it is before the court, a case presents a controversy between the parties for which, by way of resolution, the court can fashion an effective remedy." *Adkins v. State*, 324 Md. 641, 646, 598 A.2d 194, 197 (1991); *Robinson v. Lee*, 317 Md. 371, 375, 564 A.2d 395, 397 (1989); *State v. Peterson*, 315 Md. 73, 79–82, 553 A.2d 672, 675–77 (1989). Limited exceptions to this doctrine exist, however, and even if no controversy exists at the precise moment of review, a case will not be deemed moot if the controversy between the parties is "capable of repetition, yet evading review." *Sosna v. Iowa*, 419 U.S. 393, 399–400, 95 S.Ct. 553, 557, 42 L.Ed.2d

4. Parker's parole violation was based in part upon his alleged commission of burglary, malicious destruction and felony theft in Maryland after his release by the post-conviction court.

532, 540–41 (1975); *Roe v. Wade,* 410 U.S. 113, 125, 93 S.Ct. 705, 713, 35 L.Ed.2d 147, 161 (1973); *Mercy Hosp. v. Jackson,* 306 Md. 556, 565, 510 A.2d 562, 566–67 (1986) (McAuliffe, J., dissenting). *See also Attorney Gen. v. A.A. County School Bus Contractors Ass'n,* 286 Md. 324, 328, 407 A.2d 749, 752 (1979); *Coleman v. Coleman,* 57 Md.App. 755, 758, 471 A.2d 1115, 1117 (1984). In *Weinstein v. Bradford,* 423 U.S. 147, 149, 96 S.Ct. 347, 349, 46 L.Ed.2d 350, 353 (1975), the Supreme Court made clear that the "capable of repetition, yet evading review" exception to the mootness doctrine was limited and in the absence of a class action, it was applicable only where the following two elements combined: (1) the challenged action was too short in its duration to be fully litigated prior to its cessation or expiration; and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again. *Weinstein* concerned a prisoner's challenge to the procedures of the North Carolina Board of Parole. The prisoner had been released by the time the case reached the Supreme Court, and in the absence of a demonstrated probability that the prisoner would again be subject to the Board's supervisory power (thus meeting the second prong of the test), the Court dismissed the challenge as moot. In contrast to that case, both of the elements necessary to make this case capable of repetition are present in the case *sub judice.*

This case centers on the effect of Parker's federal parole on his concurrent Maryland sentence. Because his parole was revoked after we issued our writ of certiorari but before the case was argued, there can be no question that the action was too short in duration to be fully litigated. The second prong of the test is likewise met, as there is a reasonable expectation that the same complaining party would again be subject to the same action. Unlike *Weinstein v. Bradford,* here it is entirely reasonable to expect that the federal government might again parole Parker before the expiration of his sentences.[5] In this

---

5. Both Parker's original federal sentence and his Maryland sentence were originally due to expire on July 8, 2003 (twenty years from the

event, the same parties would again find themselves in identical circumstances.[6] The case is clearly "capable of repetition, yet evading review," and it is therefore not moot. The motion to dismiss is denied.

## II

Turning to the merits of this case, we note that the post-conviction hearing judge ordered Parker's release based primarily on the reasoning adopted by the Court of Special Appeals in *Gantt v. State, supra.* The intermediate appellate court likewise relied primarily on *Gantt* in affirming the post-conviction judge in the instant case. The lower courts' reliance on *Gantt* is error.

*Gantt v. State* concerned a challenge to the imposition of a 15–year sentence, to be served consecutively to a federal sentence from which Gantt was then on parole. The Court of Special Appeals had affirmed the imposition of a consecutive sentence, concluding that "a person who is on parole is actually serving a sentence outside the prison walls." *Id.,* 81

---

date on which his federal sentence commenced). Because we shall find that Parker was improperly released, the time he spent at liberty may or may not count toward service of his Maryland sentence. Although we need not decide that question today, this factor of uncertainty may itself be sufficient to render the case not moot. *See, e.g., Mabry v. Johnson,* 467 U.S. 504, 507 n. 3, 104 S.Ct. 2543, 2546 n. 3, 81 L.Ed.2d 437, 442 n. 3 (1984) (case not moot despite fact that defendant had been paroled; defendant remained in custody of state, and whether sentence was determined to be concurrent or consecutive would affect date at which parole was due to expire).

6. Parker also notes in his motion to dismiss that three charges of burglary, felony theft, and malicious destruction of property are pending against him in Maryland (*see* n. 4, *supra* ). At the time the motion was filed, no trial date had been set. Parker suggests that these charges will "have a further negative impact on any attempt to secure release from incarceration." Given the fact that Parker has been neither tried nor convicted on these charges, coupled with the fact that the charges are pending in Maryland and not in the federal system, we cannot say that the mere existence of these charges renders the possibility of federal parole in the next nine years so remote as to be beyond reasonable expectation.

Md.App. at 660, 569 A.2d at 223. The court did not stop there, but went on to state:

"Sentencing judges should be cognizant of the possibility that if the parole authorities (especially in foreign jurisdictions) do not revoke his parole—or until they do—such a defendant given a consecutive sentence to be served upon the termination of an earlier sentence may well remain free from physical restraint until the conclusion of that prior sentence or until a retake warrant is issued by the Department of Parole and Probation."

*Id.*, 81 Md.App. at 661, 569 A.2d at 224. It is this last passage that has been the cause of misunderstanding in the instant case.

The *Gantt* court was correct in its statement that parole constitutes service of the sentence beyond the prison walls, but this characterization, while correct, is incomplete. Parole may well constitute the service of a sentence, and it has been held that a parolee may be considered "in custody" for purposes of asserting standing in federal habeas corpus proceedings. *Jones v. Cunningham*, 371 U.S. 236, 243, 83 S.Ct. 373, 377, 9 L.Ed.2d 285, 291 (1963). Yet, parole is fundamentally different in nature from actual service within the prison walls. As the Supreme Court has recognized, a parolee has a liberty interest in continued freedom that an inmate does not possess:

"The liberty of a parolee enables him to do a wide range of things open to persons who have never been convicted of any crime. The parolee has been released from prison based on an evaluation that he shows reasonable promise of being able to return to society and function as a responsible, self-reliant person. Subject to the conditions of his parole, he can be gainfully employed and is free to be with family and friends and to form the other enduring attachments of normal life. Though the State properly subjects him to many restrictions not applicable to other citizens, his condition is very different from that of confinement in a prison...."

*Morrisey v. Brewer*, 408 U.S. 471, 482, 92 S.Ct. 2593, 2600–01, 33 L.Ed.2d 484, 494–95 (1972). The fundamental difference between parole and incarceration is further illustrated by the fact that, in many jurisdictions, a parolee may be denied credit for time spent on parole ("street time") if parole is subsequently revoked. *See id.* (if parolee is returned to prison, he usually receives no credit for time "served" on parole); *Dulier v. State*, 789 P.2d 372, 374 (Alaska App.1990) ("a prisoner who remains 'in custody' for the purpose of maintaining the parole board's jurisdiction over him may still be deemed 'at liberty' for denying credit [for parole not successfully completed]"); *Segarra v. State*, 430 So.2d 408, 410–11 (Miss.1983); David J. Oliveiri, Annotation, *Authority of United States Parole Commission to Credit Time Spent on Parole ("Street Time") Toward Sentence to be Served after Revocation of Parole*, 63 A.L.R.Fed. 328 (1983).

■ Literal interpretation of the language of *Gantt* would also render meaningless the notion of "constructive parole," instead requiring intermittent incarceration. If a prisoner is sentenced to consecutive sentences, that individual may be constructively paroled from one sentence so that he or she may begin serving the subsequent sentences. *See, e.g., Hines v. Pennsylvania Bd. of Probation and Parole*, 491 Pa. 142, 148–49, 420 A.2d 381, 383 (1980); 59 Am.Jur.2d, Pardon and Parole, § 73, at 60 (1987) (release from one prison may constitute a parole even though a prisoner is immediately sent to another prison under a detainer). Under the *Gantt* rationale, this prisoner would be released on parole into the community until the termination of the first term, re-incarcerated for service of the second term, released on parole until the termination of that term, etc. This result, far from efficient, can frustrate the punitive purposes of the criminal justice system.

Although a sentence continues to be served whether within prison walls or without, it is clear that parole is different in nature from, and serves a purpose different from that of, incarceration. To treat the two identically in the context of multiple sentences, as the language of *Gantt* requires, is

overly simplistic and may compel a result which is at odds with the principle of dual sovereignty.

The illogic of the reasoning of *Gantt* is illustrated by the hypothetical example of a prisoner sentenced to life imprisonment for murder in Jurisdiction A and a consecutive sentence of 20 years imprisonment for armed robbery in Jurisdiction B. We will suppose that the prisoner serves 25 years in prison and is granted parole on the life sentence in Jurisdiction A. The literal language of *Gantt* would prohibit the robbery sentence in Jurisdiction B from beginning until the termination of the life sentence in Jurisdiction A, since the prisoner is effectively serving his term of life imprisonment in Jurisdiction A 'on the outside.' Only when that term is complete (i.e., when he dies) would Jurisdiction B be able assert its jurisdiction over the prisoner. Thus, the language in *Gantt* effectively deprives Jurisdiction B of its ability to punish one who has broken its law.

We will assume further that this same prisoner, while on parole from his life sentence in Jurisdiction A, commits an additional crime in Jurisdiction C for which the punishment is ten years imprisonment. Such a crime may well constitute a parole violation in Jurisdiction A, and we may expect the parole authorities in Jurisdiction A to revoke the prisoner's parole, but they cannot be compelled to do so. If the parole authorities do not act, the prisoner continues to serve his life sentence from Jurisdiction A 'on the outside,' and regardless of whether the sentencing judge from Jurisdiction C deems his sentence concurrent or consecutive to the previous sentences, the prisoner is effectively beyond the reach of the correctional authorities in Jurisdiction C. Like Jurisdiction B, Jurisdiction C is deprived of its ability to punish one who has broken its law. This result violates the principle of dual sovereignty, a fundamental element of the structure of our government.[7]

---

**7.** Ordinarily, as it is in the instant case, the dual sovereignty doctrine is raised in the context of the unique relationship between the federal government and the sovereign states. Yet, it matters not whether our hypothetical jurisdictions A, B, and C are state or federal, for the

We discussed the principle of dual sovereignty at length in *Evans v. State,* 301 Md. 45, 481 A.2d 1135 (1984), *cert. denied sub nom. Grandison v. State,* 470 U.S. 1034, 105 S.Ct. 1411, 84 L.Ed.2d 795 (1985). We there quoted from the Supreme Court's decision in *Bartkus v. Illinois,* 359 U.S. 121, 131–32, 79 S.Ct. 676, 682, 3 L.Ed.2d 684, 691–92 (1959), which in turn quoted the following passage from *Moore v. Illinois,* 14 How. 13, 14 L.Ed. 306 (1852):

> "An offence, in its legal signification, means the transgression of a law. 14 How., at 19 [14 L.Ed. at 309]. Every citizen of the United States is also a citizen of a State or territory. He may be said to owe allegiance to two sovereigns, and may be liable to punishment for an infraction of the laws of either. The same act may be an offence or transgression of the laws of both. 14 How., at 20 [14 L.Ed. at 309]. That either or both may (if they see fit) punish such an offender, cannot be doubted. Yet it cannot be truly averred that the offender has been twice punished for the same offence; but only that by one act he has committed two offences, for each of which he is justly punishable. He could not plead the punishment by one in bar to a conviction by the other."

*Evans v. State,* 301 Md. at 52, 481 A.2d at 1138. *Evans* concerned state and federal prosecutions for offenses which arose from a single act, namely, the shooting of two individuals. If the dual sovereignty principle will permit successive prosecutions for the same act, it cannot require one jurisdiction to suspend the enforcement of its laws simply because another jurisdiction has already taken action against the same perpetrator. More than a century ago, this Court stated:

> "[i]f a party has committed a crime against the laws of two States we can perceive no good reason why he should not be punished in both States; and Mr. Bishop in his work on

---

Supreme Court has determined that "the States are no less sovereign with respect to each other than they are with respect to the Federal Government," and the dual sovereignty doctrine is equally applicable to the relationships among states. *Heath v. Alabama,* 474 U.S. 82, 89, 106 S.Ct. 433, 438, 88 L.Ed.2d 387, 395 (1985).

*Criminal Law*, sec. 136, very justly says, 'to let him go free of punishment for the felony which he has committed against our laws because he had before committed a similar felony against the laws of another country, is to suffer foreign laws to suspend the action of our own.' "

*Worthington v. State*, 58 Md. 403, 410 (1882), *quoted in Evans, supra*, 301 Md. at 57, 481 A.2d at 1141. *See also United States v. Eastman*, 758 F.2d 1315, 1318 (9th Cir.1985) (federal sentence that provided it would run consecutively to any state sentence subsequently imposed, if given effect, would "preempt the right of the state to apply its own laws on sentencing for violation of state criminal laws").

It cannot be disputed that "[f]oremost among the prerogatives of sovereignty is the power to create and enforce a criminal code." *Heath v. Alabama*, 474 U.S. 82, 93, 106 S.Ct. 433, 439–40, 88 L.Ed.2d 387, 397 (1985). Yet *Gantt*, in its statement that, "if parole authorities (especially in foreign jurisdictions) do not revoke his parole[,] . . . a defendant given a consecutive sentence to be served upon the termination of an earlier sentence may well remain free from physical restraint until the conclusion of that sentence," essentially compels the courts of this State to delay punishment of a multi-jurisdiction offender, perhaps indefinitely, subject to the discretionary actions of parole authorities in other jurisdictions. Such a constraint on this State's authority to punish those who break its laws diminishes a power essential to an independent sovereign. Therefore, to the extent that *Gantt* treats time spent on parole and time spent in prison identically in the context of multiple sentences, it is disapproved.

### III

Because *Gantt*, the primary underpinning of the decisions of both the circuit court and the Court of Special Appeals, is disapproved, the focus of this case shifts somewhat from its position in the lower courts. We perceive three issues which remain to be addressed: the authority of the sentencing judge to direct that Parker's sentence be served in a federal institu-

tion; the ability of Maryland correctional authorities to reclaim custody of Parker following his release on federal parole; and the effect of the plea agreement on Parker's sentence.

Parker contends that a key element of his agreement to plead guilty to the murder charge was his understanding that he would serve his time in federal, as opposed to state, prison. Unfortunately for Parker, neither the sentencing judge nor the prosecution had any say in where Parker would serve his time.

■ Leaving aside for the moment the plea bargaining aspect of the case, we note that Parker was convicted (through his guilty plea) of second degree murder, an offense which requires him to be "sentenced to imprisonment for not more than 30 years." Maryland Code (1957, 1992 Repl.Vol.), Art. 27, § 412(c). Article 27, Section 690 provides that

"Notwithstanding any of the provisions of this article or any other law to the contrary, judges, in the sentencing of convicted persons for any offense for which the provisions of this article ... require[ ] the imprisonment to be served at any one of those institutions enumerated in § 689 of this article, shall in all such cases sentence such persons to the jurisdiction of the Division of Correction. All such persons shall be committed to the custody of the Commissioner of Correction and delivered to him for imprisonment."

Md.Code (1957, 1992 Repl.Vol.), Art. 27, § 690(b). For an excellent exposition of the history of this provision, see *Massey v. State*, 320 Md. 605, 612–18, 579 A.2d 265, 268–71 (1990). It is clear from this language that the sentencing judge had no authority to designate the institution in which Parker would serve his sentence, particularly when the desired institution falls under the jurisdiction of the federal government, an independent, co-equal sovereign.

■■ This is not to say, however, that the judge had no authority to order that Parker's state sentence run concurrently with his federal sentence. To the contrary, it is well established that "[a] court has a power to impose whatever

sentence it deems fit as long as it does not offend the maximum and minimum penalties. This judicial power includes the determination of whether a sentence will be consecutive or concurrent, with the same limitations." *Kaylor v. State*, 285 Md. 66, 70, 400 A.2d 419, 422 (1979) (citations omitted). Designation of Parker's Maryland sentence as "concurrent" with his federal sentence was essentially a promise to grant him credit against his state sentence for time served in prison under his federal sentence. The Ninth Circuit has explained this well:

> "The fact that the sentences run concurrently merely means that the convict is given the privilege of serving each day a portion of each sentence, so that in practical effect so far as he is concerned if he serves the sentence and nothing occurs subsequent to the judgment to alter the situation he is discharged at the expiration of the maximum term imposed upon any one of the counts. . . . Even if the sentences were all for an equal period a pardon of the convict on all but one of the counts would not relieve him from serving the full term imposed upon the count for which no pardon was granted."

*Nishimoto v. Nagle*, 44 F.2d 304, 305 (9th Cir.1930), *disapproved on other grounds, Haw Tan v. Phelan*, 333 U.S. 6, 68 S.Ct. 374, 92 L.Ed. 433 (1948). Although Parker was committed to federal custody, Maryland retains penal jurisdiction over Parker, and the fact that the sentencing judge designated Parker's sentence to run concurrently with his federal sentence does not require Maryland to forfeit its jurisdiction or authority over Parker. *See Milstead v. Rison*, 702 F.2d 216, 218 (11th Cir.1983) (Texas did not lose jurisdiction over prisoner by surrendering him to federal authorities for service of concurrent federal sentence); *Piper v. Estelle*, 485 F.2d 245, 246 (5th Cir.1973) (state waives jurisdiction over prisoner by surrendering him to another sovereign *only* if state's action is "so affirmatively wrong or its inaction so grossly negligent that it would be unequivocally inconsistent with fundamental principles of liberty and justice to require a legal sentence to be served in the aftermath of such action or inaction");

*Williams v. Department of Corrections,* 438 F.2d 78, 79 (9th Cir.1971) ("if, on appellant's release from federal custody, where he is now serving both federal and state sentences, time remains unserved on the California sentence, he may properly be removed to California custody"); *In re Patterson,* 64 Cal.2d 357, 362, 49 Cal.Rptr. 801, 804, 411 P.2d 897, 899–900 (1966) (California does not waive jurisdiction over prisoner who was transferred to Texas in order to serve concurrent sentences); *People v. Lewis,* 193 Colo. 203, 207–08, 564 P.2d 111, 114 (1977) (transfer of prisoner to Nebraska in order that he may serve Colorado sentence concurrently does not amount to waiver of Colorado's jurisdiction; if he is released by Nebraska authorities with time remaining on Colorado sentence, he must be returned to Colorado).

■ Maryland also retains the independent authority to determine whether and when Parker is to be released on parole from his state sentence, regardless of any decisions that are made concerning parole from the federal sentence. *See Garafola v. Wilkinson,* 721 F.2d 420, 424–25 (3d Cir.1983) ("A state prison to which a federal prisoner has been paroled must make an entirely separate and independent judgment whether, under state criteria, the prisoner is entitled to state parole.... Where a prisoner has violated both state and federal law and is convicted by both forums, he has brought down upon himself the possibility of being paroled from federal prison to state prison."), *cert. denied,* 466 U.S. 905, 104 S.Ct. 1681, 80 L.Ed.2d 155 (1984). *See also Gerberding v. United States,* 484 F.2d 1353, 1355 (8th Cir.1973) (finding "no authority or logic that the termination of one concurrent sentence terminates all concurrent sentences"). *But see Brock v. Sowders,* 610 S.W.2d 591, 592–93 (Ky.1980) (time served on parole from Indiana sentence satisfies the Kentucky sentence which is to run concurrently with it, so as to prohibit Kentucky officers from detaining the convict when he is released on parole by Indiana).

The case *sub judice* is similar to that presented to Louisiana courts in *State ex rel. Bartie v. State,* 501 So.2d 260 (La.App. 1 Cir.1986). Bartie had originally been convicted in Texas and

sentenced to imprisonment. While serving this sentence, he was delivered to Louisiana authorities to answer pending charges on aggravated assault. He pleaded guilty and was sentenced to a term of imprisonment for five years, which sentence was to run concurrently with the Texas term Bartie was then serving. He was returned to Texas authorities to complete his Texas sentence.

Bartie was subsequently paroled in Texas and taken into custody by Louisiana authorities to serve the time remaining on his original five-year sentence. He claimed that he should be free from restraint by Louisiana authorities because he had been paroled from a concurrent sentence by the State of Texas. The Louisiana appellate court adopted the reasoning and conclusion of the trial court, which held:

"Mr. Bartie contends that his Texas parole controls the Louisiana sentence.

"Mr. Bartie is in error. He cites neither authority nor jurisprudence to support his position, and I frankly know of none. [His] sentence to the Department of Corrections for the State of Louisiana was for a period of five years. That sentence must be satisfied, either by service in Texas or Louisiana, or parole by both states."

*State ex rel. Bartie v. State*, 501 So.2d at 263.

Like the Louisiana court, we can find no persuasive authority for the intermediate appellate court's conclusion that "serving the balance of his [federal sentence of] twenty years on parole will satisfy [Parker's] Maryland sentence," *Parker, supra*, 93 Md.App. at 603, 613 A.2d at 1023, and we disapprove of the Court of Special Appeals' reasoning in this case.[8] To

---

8. Apparently, the General Assembly similarly disapproves of the intermediate appellate court's decision in the case *sub judice*. The Legislature recently enacted Ch. 295 of the Acts of 1994, the preamble to which states that it is expressly intended to overrule *State v. Parker*. The new law statutorily requires a convict who is serving concurrent Maryland and foreign sentences in a foreign jurisdiction to be returned to the custody of the Maryland Division of Correction if the convict is released from the custody of the foreign jurisdiction prior to completion of the Maryland sentence.

hold otherwise would be to cede to the federal government one of the foremost of this State's prerogatives of sovereignty: the power to enforce its criminal code. *See Heath v. Alabama, supra,* 474 U.S. at 93, 106 S.Ct. at 439–40, 88 L.Ed.2d at 397. If a convict is sentenced to two separate terms of imprisonment, one in federal custody and one in Maryland custody, the designation of the Maryland sentence as concurrent may permit the prisoner to receive credit for the time he serves in federal prison. Nevertheless, both sentences remain independent, and both sentences must be satisfied independently. The Maryland sentence, designated as concurrent, may be satisfied either by imprisonment in federal custody or in Maryland, or by parole by Maryland authorities.[9]

Were it not for the fact that Parker's sentence arose from a plea agreement, this case would be readily disposed of on the ground that parole from a concurrent federal sentence does not deprive Maryland authorities of their jurisdiction over an individual sentenced under the laws of this state. As it is, the site of Parker's incarceration was bargained-for, albeit unfulfillable and unenforceable, consideration, and the matter becomes more complex.

First, we will address briefly the State's assertion that the issue of Parker's rights under his plea bargain is not properly before this Court because it was raised in neither the State's petition for a writ of certiorari nor the order of this Court granting the writ. Maryland Rule 8–131(b) provides that "the Court of Appeals *ordinarily* will consider only an issue that has been raised in the petition for certiorari or any cross-petition and that has been preserved for review by the Court of Appeals" (emphasis added). The use of the term

---

**9.** As the State points out, the Maryland Parole Commission ordinarily possesses the exclusive authority to "authorize the parole of individuals sentenced under the laws of this State." Md.Code (1957, 1990 Repl. Vol., 1992 Cum.Supp.), Art. 41, § 4–504(a)(1); *Patuxent Inst. Bd. of Review v. Hancock,* 329 Md. 556, 573–74, 620 A.2d 917, 926, *cert. denied,* —— U.S. ——, 114 S.Ct. 284, 126 L.Ed.2d 234 (1993). Unless a statute provides to the contrary, courts are not empowered to determine whether or when a prisoner should be released on parole.

"ordinarily" implies that this Court possesses the discretion to consider issues that were not necessarily raised in the petition or order for a Writ of Certiorari. *See, e.g., State v. Bell,* 334 Md. 178, 188, 638 A.2d 107, 113 (1994). Because of the public policy implications that arise from the government's failure to fulfill a material element of a plea agreement, we shall exercise our discretion to consider this issue.

The record of the initial sentencing hearing reflects that Parker's desire to serve his sentence in federal custody was born of concern for his safety. Parker's attorney explained that "[b]ecause of his agreement [to testify], of course, there are various individuals he does not want to come into contact with in the Department of Corrections." The State concedes that the prosecution had agreed to alert the Commissioner of Corrections that "the time is to be served in the federal institution," and it is apparent from the transcript that the court understood that the designation of a federal institution was a part of the plea agreement, even remarking that the commitment record should reflect that Parker's sentence was "to be served with or at the federal institution." We are of the opinion, then, that this condition was a material element of Parker's agreement, even though Parker admits that he was never expressly promised that he would not be returned to Maryland. It is undisputed that once Parker was paroled by the federal government and detained by Maryland authorities, this condition was no longer met. We must now decide what remedy is appropriate under the circumstances.

Generally, courts will not tolerate broken plea agreements, for there are strong public policy reasons supporting the rapid disposition of criminal charges through plea bargaining. We stated our view in *State v. Brockman,* 277 Md. 687, 693, 357 A.2d 376, 381 (1976), that "plea bargains, when properly utilized, aid in the administration of justice and, within reason, should be encouraged." We referred at that time to the Supreme Court's recognition that

"[d]isposition of charges after plea discussions is not only an essential part of the process but a highly desirable part for

many reasons. It leads to prompt and largely final disposition of most criminal cases; it avoids much of the corrosive impact of enforced idleness during pre-trial confinement for those who are denied release pending trial; it protects the public from those accused persons who are prone to continue criminal conduct even while on pretrial release; and, by shortening the time between charge and disposition, it enhances whatever may be the rehabilitative prospects of the guilty when they are ultimately imprisoned."

*Santobello v. New York,* 404 U.S. 257, 261, 92 S.Ct. 495, 498, 30 L.Ed.2d 427, 432 (1971), *cited with approval in State v. Brockman,* 277 Md. at 693, 357 A.2d at 380–81. We also acknowledged in *Brockman* that "[i]t is ... no longer open to question that plea agreements are at times entitled to judicial enforcement." *Id.* at 694, 357 A.2d at 381. As the Supreme Court has recognized, the integrity of the judicial process requires that plea negotiations be accompanied by adequate safeguards

"to insure the defendant what is reasonably due in the circumstances. Those circumstances will vary, but a constant factor is that when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, *such promise must be fulfilled.*"

*Santobello,* 404 U.S. at 262, 92 S.Ct. at 499, 30 L.Ed.2d at 433 (emphasis added).

▮ Specific enforcement of plea arrangements is a common remedy when a party breaches the agreement or when a party has demonstrated substantial reliance on the agreement. *See, e.g., State v. Poole,* 321 Md. 482, 497, 583 A.2d 265, 272 (1991) (holding court bound to plea agreement when defendant, relying on court's effective acceptance of agreement, provided evidence regarding criminal activity of and testified against law enforcement officers); *Osborne v. State,* 304 Md. 323, 339, 499 A.2d 170, 178 (1985) (refusing to allow State to repudiate agreement when sentence was less than contemplated); *Sweetwine v. State,* 42 Md.App. 1, 4, 398 A.2d 1262, 1269

(1979) (refusing to allow defendant to repudiate plea agreement while retaining the benefits of that agreement), *aff'd,* 288 Md. 199, 421 A.2d 60, *cert. denied,* 449 U.S. 1017, 101 S.Ct. 579, 66 L.Ed.2d 477 (1980); Note, *Constitution Held to Afford Criminal Defendants a Right to Specific Performance of Plea Proposals under Appropriate Circumstances,* 9 U.Balt.L.Rev. 295 (1980); Note, *The Legitimation of Plea Bargaining: Remedies for Broken Promises,* 11 Am.Crim.L.Rev. 771 (1973).

Specific performance becomes problematic, however, when the original promise upon which the defendant has relied cannot legally be fulfilled. A commentator has summed up well the typical situation and the dilemma faced by the court which must make a decision in the matter:

> "Unfulfillable plea bargains ... often involve promises that the defendant be assigned to a certain prison or be paroled in a certain amount of time.... [and] the result is an infringement on a sentencing judge or parole board. In any case, the court resolving the problem faces an unpleasant choice: order specific enforcement of the unauthorized promise and bind officials who took no part in the plea negotiations, or merely allow withdrawal of the guilty plea, ignoring the consequences of the defendant's reliance on the bargain."

Note, *Specific Performance of "Unfulfillable" Plea Bargains,* 14 Mich.J.L.Reform 105, 106 (1980). *Santobello* listed the possible remedies for an unfulfillable plea agreement as either specific performance of the agreement or withdrawal of the guilty plea, with the ultimate decision to be discretionary and guided by the circumstances of each case. 404 U.S. at 263, 92 S.Ct. at 499, 30 L.Ed.2d at 433. Many jurisdictions follow the rule that, in general, the proper remedy for a plea bargain based on an illegal sentence is to allow the defendant the opportunity to withdraw the guilty plea. *See, e.g., People v. Jackson,* 121 Cal.App.3d 862, 176 Cal.Rptr. 166 (2d Dist.1981) (because defendant's guilty plea was induced by promise of sentence which was less than statutory minimum, defendant may withdraw plea, but is not entitled to benefit of bargain of

illegal sentence); *Chae v. People,* 780 P.2d 481, 486 (Colo.1989) (illegal sentence recommendation as material element of plea agreement will render agreement invalid and require that guilty plea be vacated); *State v. Hernandez,* 107 Idaho 947, 949, 694 P.2d 1295, 1297 (1985) (plea based on promise that cannot be met by the state must be withdrawn at defendant's insistence); *People v. Selikoff,* 35 N.Y.2d 227, 228, 360 N.Y.S.2d 623, 633, 318 N.E.2d 784, 791 (1974) (specific enforcement not available because any sentence "promise" at the time of plea is, as a matter of law and public policy, conditional upon its being lawful and appropriate; proper remedy is to allow withdrawal of guilty plea), *cert. denied,* 419 U.S. 1122, 95 S.Ct. 806, 42 L.Ed.2d 822 (1975); Christopher Vaeth, Annotation, *Guilty Plea as Affected by Fact that Sentence Contemplated by Plea Bargain is Subsequently Determined to be Illegal or Unauthorized,* 87 A.L.R.4th 384 (1991). At the same time, however, there is ample authority supporting the election of specific performance of unfulfillable plea bargains when, for example, the promise in question is unfulfillable because it violates a statutory sentencing provision or exceeds the authority of the prosecutor.[10] *See, e.g., Palermo v. Warden,* 545 F.2d 286 (2d Cir.1976) (defendant entitled to specific performance of plea agreement, notwithstanding fact that prosecutor's promise of early parole was *ultra vires* ), *cert. dismissed,* 431 U.S. 911, 97 S.Ct. 2166, 53 L.Ed.2d 221 (1977); *Geisser v. United States,* 513 F.2d 862, 871 (5th Cir.1975) (although plea bargain promising parole after three years usurped authority of parole board, bargain was enforceable); *Correale v. United States,* 479 F.2d. 944, 950 (1st Cir.1973) (promise of certain sentence must be enforced, even though sentence violated minimum sentencing statute); *United States v. Carter,* 454 F.2d 426, 428 (4th Cir.1972) (en banc) (govern-

---

**10.** One commentator has argued that specific performance should always be the preferred remedy if a defendant can show detrimental reliance on an unfulfillable plea bargain. Note, *Specific Performance of "Unfulfillable" Plea Bargains,* 14 Mich.J.L.Reform 105 (1980). Under this theory, the presumption of specific performance would be rebuttable only upon a showing of immediate and compelling harm to the bound party or to others affected by the bargain. *Id.* at 119.

ment bound by federal prosecutor's promise of immunity from prosecution outside his own jurisdiction), *cert. denied,* 417 U.S. 933, 94 S.Ct. 2646, 41 L.Ed.2d 237 (1974); *State v. Gourdin,* 156 Ariz. 337, 339, 751 P.2d 997, 999 (Ariz.App.1988) (illegal sentence can be modified to give defendant benefit of his bargain); *Brock v. Sowders, supra,* 610 S.W.2d at 592 ("the government should not be allowed to welch on its bargain"); *Rise v. Board of Parole,* 304 Or. 385, 392–93, 745 P.2d 1210, 1214–15 (1987) (acknowledging in dicta that specific performance of prosecutor's unauthorized promise of early parole may be appropriate when rescission of plea agreement will not provide adequate remedy because defendant has already fully performed); *Commonwealth v. Zuber,* 466 Pa. 453, 460–61, 353 A.2d 441, 445–46 (Pa.1976) (proper remedy for unfulfillable promise of concurrent sentence was modification of sentence to give defendant benefit of bargain, notwithstanding law that sentences must be consecutive); *State v. Miller,* 110 Wash.2d 528, 533, 756 P.2d 122, 125 (1988) (defendants' constitutional rights take priority over statutory provisions).

The case *sub judice* presents an even more difficult problem. As we have explained above, neither the sentencing judge nor the prosecutor had authority to designate the institution, much less the foreign jurisdiction, in which Parker would serve his sentence. But unlike many other "unfulfillable promise" cases, the promise in this case was not only beyond the authorities of the prosecutors to promise, it is also beyond the power of this Court to enforce.[11] As a commenta-

---

11. We note that Md.Code (1957, 1992 Repl.Vol.), Art. 27, § 690(h) does permit the Commissioner of Correction to contract with the federal government "for the transfer of inmates from institutions and facilities operated by the Division to appropriate institutions and facilities operated by or for the federal government." The federal government is likewise empowered to enter into such contracts by 18 U.S.C.A. § 5003(a) (West Supp.1994). These provisions merely provide the Commissioner with the authority to make alternative custodial arrangements for inmates; they do not attempt to confer jurisdiction over federal institutions upon either the Division of Correction or the courts of this State; nor do they empower the courts of this State to dictate the course of action to be followed by the Commissioner.

tor has noted, "[t]he federalism implications of binding a federal prosecutor [or Bureau of Prisons] to a state prosecutor's promise, or vice versa, have presented a strong barrier to enforcement of intersovereign plea bargains." Note, *Specific Performance of "Unfulfillable" Plea Bargains, supra,* at 121. We simply cannot order federal authorities to keep Parker in prison so that he may serve his state sentence after the federal Parole Commission has decided to parole Parker from his federal sentence.[12]

Thus, it is clear that specific performance of the provision that Parker's Maryland sentence shall be served in a federal institution is not possible. We must decide, therefore, what remedy is appropriate so that, in accordance with the *Santobello* mandate, Parker will receive what is reasonably due under the circumstances.

When it issued an order releasing Parker, the post-conviction court was apparently attempting to specifically compel, within the limits of its jurisdiction, performance of the plea agreement. The judge stated: "Parker was led to understand

---

Interestingly, the promise in this case is also beyond the power of the federal courts to enforce, as a federal court may not designate the site of an inmate's confinement. That power is relegated exclusively to the federal Bureau of Prisons. 18 U.S.C.A. § 3621(b) (West Supp.1994). The Bureau of Prisons may designate any available penal facility, whether maintained by the federal government or otherwise. *See, e.g., Barden v. Keohane,* 921 F.2d 476 (3rd Cir.1990).

12. Federal courts appear to be disinclined to enforce a state's designation of its sentence as concurrent with a federal sentence, even if concurrence is a material element of a plea bargain, when such enforcement would circumscribe the discretion of the federal Parole Commission. *See, e.g., Meagher v. Dugger,* 737 F.Supp. 641, 647 (S.D.Fla.1990), *aff'd, Meagher v. Clark,* 943 F.2d 1277 (11th Cir.1991); *Pinaud v. James,* 851 F.2d 27, 30 (2d Cir.1988); *Saulsbury v. United States,* 591 F.2d 1028, 1031 (5th Cir.), *cert. denied,* 444 U.S. 857, 100 S.Ct. 118, 62 L.Ed.2d 77 (1979). Often, this refusal has been grounded in the principles of dual sovereignty. *See, e.g., Meagher v. Clark, supra,; United States v. Sackinger,* 704 F.2d 29, 32 (2d Cir.1983) (under dual sovereignty principle, federal court not bound by agreement of state plea agreement unless federal officials were involved in plea bargain); *Lionel v. Day,* 430 F.Supp. 384, 386 (W.D.Okla.1976) ("obviously no comment or order by a state judge can control the service of a federal sentence").

that he would serve the 20–year sentence imposed by Judge Hormes within the federal prison system. Therefore, he is entitled to the benefit of his bargain even though parole is admittedly 'milder' than incarceration." This remedy, however, gives Parker much more than he bargained for, and consequently, the state has not received the full benefit of its bargain. Parker bargained for twenty years incarceration. He may have had a unilateral hope of parole, but because parole is a matter of grace and not of right, constitutional or otherwise, *Richardson v. State*, 332 Md. 94, 106, 630 A.2d 238, 244 (1993); *Patuxent Inst. Bd. of Review v. Hancock*, 329 Md. 556, 574, 620 A.2d 917, 925, *cert. denied*, —— U.S. ——, 114 S.Ct. 284, 126 L.Ed.2d 234 (1993), he certainly possessed no vested expectation that he would be paroled. Unconditional release deprives the state of a benefit of *its* bargain, i.e., the opportunity to keep Parker incarcerated and away from the public for a term of 20 years. As Justice Cardozo stated in *Snyder v. Massachusetts*, 291 U.S. 97, 122, 54 S.Ct. 330, 338, 78 L.Ed. 674, 687 (1934), "[J]ustice, though due to the accused, is due to the accuser, also. . . . We are to keep the balance true." Moreover, the remedy ordered by the post conviction court essentially compels the state to forfeit its jurisdiction over Parker, a result which is unacceptable under the principles of dual sovereignty. Unconditional release is not the proper remedy in the instant case.

The Court of Special Appeals has twice encountered a situation in which defendants relied on unfulfillable promises in their decisions to plead guilty. In *Rojas v. State*, 52 Md.App. 440, 450 A.2d 490 (1982), the defendant, a resident alien from Venezuela, agreed to plead guilty to second degree rape. The State, in return, agreed to recommend a ten-year suspended sentence with five years' probation. The defendant had also agreed, as a condition of probation, to forfeit his status as a resident alien and leave the country within 90 days. The trial court accepted both the guilty plea and the prosecution's recommended sentence, stating that "one of the conditions of his probation is that he surrender his green resident alien status, and that he leave the country within ninety days,

and if the immigration authorities are intent on deporting him, then he will not oppose deportation, and that he will never return." *Rojas v. State,* 52 Md.App. at 442, 450 A.2d at 492.

The Court of Special Appeals determined that the lower court had exceeded its authority. Because Congress possesses exclusive authority over deportation proceedings, the portion of the sentence that required Rojas not to oppose deportation was preempted by the Supremacy Clause of the United States Constitution. *Id.* at 443, 450 A.2d at 492. Notwithstanding its lack of enforceability, the deportation element was material to the plea agreement, and by failing to leave the country without protest, the defendant had breached his promise under the plea agreement.

In attempting to fashion a remedy, the Court of Special Appeals cited the reasoning of the Fourth Circuit in *United States v. McIntosh,* 612 F.2d 835, 837 (4th Cir.1979), in which the court had held: "With predictability and reliance as the foundation of plea bargaining itself, we must apply fundamental contract and agency principles to plea bargains as the best means to fair enforcement of the parties' agreed obligation." We agree that contract principles should generally guide the determination of the proper remedy of a broken plea agreement. We also agree, however, with the Court of Special Appeals' recognition that contract principles alone will not suffice. The intermediate appellate court stated in *Rojas* that "[t]he bounds of plea agreement and contract law are not coterminous; we may determine what is fair in the circumstances by reference to public policy considerations outside the law of contract." *Rojas,* 52 Md.App. at 444, 450 A.2d at 493. *See also State v. Brockman,* 277 Md. at 697, 357 A.2d at 383 (rigid application of contract law to plea negotiations would be incongruous); *United States v. Olesen,* 920 F.2d 538, 541–42 (8th Cir.1990) (plea agreements are like contracts, but they are not contracts; although contract doctrines may be helpful, due process requires a deviation from normal commercial contract law); *State v. Yoon,* 66 Haw. 342, 348–49, 662 P.2d 1112, 1116 (1983) (contract analogies are helpful, but

because unfulfilled plea bargains may call constitutional rights into question, court may not rely solely on principles of contract law). One such consideration of public policy, according to the *Rojas* court, is that "[m]ere severance of an unenforceable sentence term such as banishment is appropriate only when the remainder of the original sentence will adequately protect the public." *Rojas,* 52 Md.App. at 445, 450 A.2d at 494. After applying contract principles and public policy considerations to the facts of *Rojas,* the Court of Special Appeals determined that the fairest remedy in that case would be to rescind the entire plea agreement, thus placing both parties in their original positions, unprejudiced by the mistake of law. *Id.* at 446, 450 A.2d at 494. *See also United States v. Hammerman,* 528 F.2d 326, 332 (1975) (prosecutor lacked power to assure defendant that court would accept recommendation for sentence; proper remedy is to withdraw guilty plea); *State ex rel. Morris v. Mohn,* 165 W.Va. 145, 152–53, 267 S.E.2d 443, 448 (1980) (because the defendant's agreement to guilty plea was based on a promise of concurrence with a federal sentence that could not be fulfilled by the State, guilty plea must be set aside).

Simple rescission of the plea agreement will not always be the appropriate remedy under the circumstances, however. Prior to its decision in *Rojas,* the Court of Special Appeals had considered a case which was factually similar to the case *sub judice.* In *Johnson v. State,* 40 Md.App. 591, 392 A.2d 1157 (1978), the defendant pled guilty to two counts of storehouse breaking and was sentenced to eight years on one count and five years on the other. At the time the crimes were committed, the defendant was on parole from a Pennsylvania state prison, and apparently both the defendant and Maryland authorities expected that Pennsylvania would revoke the defendant's parole and re-incarcerate him in that state. His Maryland sentence, therefore, provided that the eight-year and five-year terms of incarceration would be served consecutively to each other, but concurrently with the two terms the defendant expected to face in Pennsylvania.

The matter was complicated by the fact that, contrary to the expectations of all concerned, Pennsylvania authorities did not seek to reclaim custody of the defendant. The intermediate appellate court recognized that the defendant could possibly face a lengthier imprisonment than had been contemplated:

> "The circumstances now are such that appellant may serve the remainder of his Maryland sentence in this State and then be forced to serve the remainder of the Pennsylvania sentences upon the future revocation of his parole. It is entirely conceivable that Pennsylvania could either wait until the Maryland time had been served before reimposing the balance of appellant's sentences or reimpose those sentences so as to run consecutively to those now being served in Maryland."

*Johnson v. State,* 40 Md.App. at 596–97, 392 A.2d at 1160. Johnson consequently sought specific performance of the plea agreement. After reviewing the transcript of the proceedings, the intermediate appellate court determined that

> "appellant is clearly being denied an essential element of the bargain, to wit: his immediate return to Pennsylvania. Whether or not the Maryland courts have the power to return appellant to Pennsylvania to serve his time there is beside the point. The crucial consideration here is that appellant has not been given that which he justifiably contemplated as the *quid pro quo* for his guilty pleas."

*Id.* The court determined that it lacked the authority to order specific performance, since it could not instruct the Pennsylvania authorities to immediately resolve Johnson's status as a parolee. The court further conceded that "neither this Court nor the trial court has the benefit of knowing what, if anything, the Pennsylvania authorities will do concerning appellant." *Id.* at 598–99, 392 A.2d at 1161. The Court of Special Appeals concluded that under the facts of that case, the only practical solution was to offer Johnson a choice between two alternatives: (1) leave the guilty plea undisturbed and accept the sentences imposed; or (2) withdraw the guilty plea and go to trial on the original charges. *Id.* at 599, 392 A.2d at 1161.

We agree with the intermediate appellate court's solution; under certain circumstances, the defendant may be allowed to choose the remedy for an unfulfillable plea bargain. *See, e.g., Santobello v. New York*, 404 U.S. at 267, 92 S.Ct. at 501, 30 L.Ed.2d at 436 (Douglas, J., concurring) (in choosing a remedy, "a court ought to accord a defendant's preference considerable, if not controlling, weight"); *State v. Miller*, 110 Wash.2d at 535, 756 P.2d at 126 (defendant's choice of remedy for an unfulfillable plea bargain is controlling.)

Our dilemma is therefore like the one that faced the *Johnson* court. We lack the authority to order specific performance of this agreement. Rescission in this case, however, cannot return the parties to their original positions because Parker has already provided information, testified, and served eleven years of his sentence. At the same time, an order that Parker be unconditionally released on parole would infringe on the exclusive statutory authority and discretion of the Parole Commission and effectively cede the state's penal jurisdiction to federal parole authorities. Under these circumstances, we believe that, as in *Johnson*, the only practical and fair solution, both for Parker and for the public, is to offer Parker a choice: (1) He may elect to leave his guilty plea in place, and when he is released on parole from his federal sentence, he must be returned to the custody of the Division of Correction to serve the balance of his state sentence; or (2) he may withdraw his guilty plea, with the understanding that the State is free to try him on the original charges, including first degree murder, or to negotiate another plea agreement.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED; CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO REMAND THE CASE TO THE CIRCUIT COURT FOR BALTIMORE COUNTY FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION; COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY PETITIONER.*