JAMES, J.,
dissenting:
¶18. I respectfully dissent from the majority opinion. In the plea agreement entered on October 7, 1981, Trotter’s life sentences were to run concurrently, and he would be allowed to serve the sentences at the federal penitentiary. The trial court’s order reflected the terms of the agreement. Trotter was paroled by the United States Parole Commission on May 13, 2011. However, the Mississippi Parole Board denied Trotter parole almost a month before Trotter was scheduled to be released from federal custody, so when he was actually released from federal prison, he was immediately transferred to the custody of the Mississippi Department of Corrections.
¶ 19. Trotter’s current PCR motion ordinarily would be procedurally barred. “Under the Uniform Post-Conviction Collateral Relief Act (UPCCRA), a motion for relief following a guilty plea is untimely unless filed within three years after entry of the judgment of conviction.” Smith v. State, 118 So.3d 180, 182 (¶ 7) (Miss.Ct.App.2013). Trotter filed his latest PCR motion over thirty years after he was sentenced; well outside the statute of limitations.
¶ 20. Trotter was sentenced on October 19, 1981, and Trotter did not file his first PCR motion until October 9, 2003. The trial court denied his PCR motion and this Court affirmed. Trotter filed another PCR motion on April 11, 2012, which the *834 trial court dismissed, holding that the motion constitutes a successive writ. Under the UPCCRA, “[t]he order as provided in subsection (5) of this section or any order dismissing the petitioner’s motion or otherwise denying relief under this article is a final judgment and shall be conclusive until reversed. It shall be a bar to a second or successive motion under this article.” Miss.Code Ann. § 99-39-23(6) (Supp.2014). We have also stated that “[a] petitioner who files a second PCR motion must demonstrate that he meets an exception in section 99-39-23. The burden of proving that no procedural bar exists falls squarely on the petitioner.” Cosner v. State, 111 So.3d 111, 113 (¶ 13) (Miss.Ct.App.2013).
¶ 21. There is, however, an exception to this rule. The statute provides: “Likewise excepted are those cases in which the petitioner claims that his sentence has expired or his probation, parole or conditional release has been unlawfully revoked.” Miss. Code Ann. § 99-39-23(6). Trotter asserts essentially that his parole has been revoked by the State after he was released from federal prison, which falls into the statutory exception. This issue goes to the heart of the plea agreement. According to the plea agreement, Trotter did not consent to serve time in the Mississippi Department of Corrections. Parole is an issue only because he was transferred to the state penitentiary after leaving federal custody.
¶22. Trotter’s plea-agreement terms were that both sentences ran concurrently, and he would be allowed to serve them in the federal penitentiary. The trial court accurately stated that it does not have jurisdiction to grant or deny parole. The law is well settled that there is no statutory right of appeal from the denial of parole. Rochell v. State, 36 So.3d 479, 482 (¶ 9) (Miss.Ct.App.2010). However, “the trial court may assert jurisdiction over those claims which raise constitutional issues.” Id.
¶ 23. The majority opinion cites Vice v. State, 679 So.2d 205 (Miss.1996); however, in that case, the judge clearly explained that the federal sentence “will not start to run until you have finished the service of your term with the state. It’s to run consecutive, not concurrent. Let’s have that clearly understood.” Id. at 206. The judge did not exceed his jurisdictional boundaries and further stated: “This order shall in no way terminate or release Vice from his obligation to serve the state life sentence in Jackson County, Mississippi.” Id. at 207. The judge further stated that the sentence imposed by the court will not “affect the discretion of the responsible federal and state authorities determining parole policy.” Id. The language of the court clearly stayed within its jurisdictional boundaries. Here, the trial court’s language was unclear and did not refer to parole policy or reconcile any conflict between the sentence imposed by the state and the sentence imposed by the federal government.
¶24. Here, Trotter raises due-process concerns over his continued incarceration after being awarded parole from the United States Parole Commission. Further, the promise to allow him to serve his sentence at a federal penitentiary is in the plea agreement and order; therefore, it could be inferred that it was intended to be part of the plea agreement. However, the trial court overreached its authority by promising Trotter that he could serve his sentence in a federal penitentiary. As the majority opinion states, the life sentences were in two separate jurisdictions. The trial court exceeded its jurisdiction by ordering Trotter to serve his Mississippi sentence in the federal penitentiary, creating a conflict when he was paroled by the federal government, but not the state. As *835 a result, the trial court interfered with Trotter’s parole, which is a “legislative grace.”
¶ 25. In Santobello v. New York, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971), the Supreme Court of the United States addressed the issue of the breach of a plea agreement. The Court ultimately-held that “when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled.” Id. at 262, 92 S.Ct. 495. The Court also stated “[t]hat the breach of agreement was inadvertent does not lessen its impact.” Id. Further, “[t]he state, whether it be through the prosecutor, the trial judge, or both is bound by its plea bargain agreement with a defendant who pleads guilty pursuant to the agreement.” Lewis v. State, 776 So.2d 679, 681 (¶ 13) (Miss.2001).
¶ 26. Further, “[w]e apply general principles of contract law in order to interpret the terms of a plea agreement. To determine whether a plea agreement was breached we consider ‘whether the government’s conduct is consistent with the defendant’s reasonable understanding of the agreement.’ ” United States v. Hinojosa, 749 F.3d 407, 413 (5th Cir.2014). The Supreme Court of Mississippi has also held that “[qjuestions concerning the construction of contracts are questions of law that are committed to the court rather than questions of fact committed to the fact[-]finder.” City of Belzoni v. Johnson, 121 So.3d 216, 219 (¶ 6) (Miss.2013).
¶ 27. In Santobello, the ultimate relief due to the petitioner was left for the trial court to decide, “whether the circumstances of this case require only that there be specific performance of the agreement on the plea, in which case petitioner should be resentenced by a different judge, or whether, in the view of the state court, the circumstances require granting the relief sought by petitioner.” Santobello, 404 U.S. at 263, 92 S.Ct. 495. An evidentiary hearing should be conducted by the trial court to determine what type of relief Trotter is entitled to receive.
¶ 28. In State v. Parker, 334 Md. 576, 640 A.2d 1104 (1994), the Court of Appeals of the State of Maryland addressed a similar issue. The Court stated: “Specific enforcement of plea agreements is a common remedy when a party breaches the agreement or when a party has demonstrated substantial reliance on the agreement.” Id. at 1115. However, the court still recognized that the plea agreement entered into between Parker and the State was unenforceable, and “unlike many other ‘unfulfillable promise’ cases, the promise in this case was not only beyond the authorities of the prosecutors to promise, it is also beyond the power of this Court to enforce.” Id. at 1116. Neither the sentencing judge nor the prosecutor had the authority to assign the defendant to a specific institution, especially one in a foreign jurisdiction. Id. The Court held that under certain conditions, the defendant may be allowed to choose the remedy for an unfulfillable plea bargain. Id. at 1119. The court further held that the defendant should be offered a choice between two options: (1) leave the guilty plea in place and accept the sentence imposed, or (2) withdraw the plea and possibly go to trial on the initial charges or negotiate another plea agreement. Id.
¶ 29. Therefore, I would find that the trial court erred in dismissing Trotter’s PCR motion and reverse and remand for further proceedings.