2010 UT App 138

**STATE of Utah, Plaintiff and Appellee,**

v.

**Kenneth Neal HOLT, Defendant and Appellant.**

No. 20080793–CA.

Court of Appeals of Utah.

May 27, 2010.

James C. Bradshaw and Ann Marie Taliaferro, Salt Lake City, for Appellant.

Mark L. Shurtleff and Jeanne B. Inouye, Salt Lake City, for Appellee.

Before Judges DAVIS, ORME, and BENCH.[1]

## OPINION

ORME, Judge:

¶ 1 This case involves the determination of whether the 2006 amendments to Utah's criminal offense reduction statute, which took away a trial court's discretion to reduce the level of offense for convictions that require sex offender registration,[2] constitute an ex post facto law or a law impairing the obligation of contracts as applied to Defendant, who relied on the prospect of a two-level reduction in entering his guilty plea. This opinion concludes that the 2006 reduction statute is not an ex post facto law because it is not a retroactive law and does not aggravate Defendant's crime or increase the criminal penalty for Defendant's crime. This opinion also declines to require the trial court to apply the 2003 reduction statute to Defendant based on his contract theory because his plea bargain implicitly incorporated existing

---

**1.** Judge Russell W. Bench participated in this case as a regular member of the Utah Court of Appeals. He retired from the court on January 1, 2010, before this decision issued. Hence, he is designated herein as a Senior Judge. *See* Utah Code Ann. § 78A–3–103(2) (2008); Sup.Ct. R. of Prof'l Practice 11–201(6).

**2.** *Compare* Utah Code Ann. § 76–3–402 (2003) (providing no limitations, based on the category of offense, to a court's discretion to reduce), *with id.* § 76–3–402(6) (Supp.2006) (precluding a court from reducing the level of offense for convictions that require sex offender registration). The Legislature also rewrote the section in 2007, *see id.* § 76–3–402 amendment notes (2008), but this appeal concerns the 2006 version.

law at the time it was entered, including case law indicating that the reduction statute in effect at the time a probationer has completed the terms of probation is the version that applies. *See State v. Shipler*, 869 P.2d 968, 970–71 (Utah Ct.App.1994). This opinion recognizes, however, that in entering his guilty plea, Defendant relied on the State's promise to stipulate to a two-level reduction and, therefore, on the strong possibility that the trial court would consider and enter just such a reduction. Because the trial court is now incapable of granting a reduction, the issue remaining is whether Defendant's guilty plea can be withdrawn. While we express no opinion on the merits of such a claim, we do conclude that it needs to be pursued, if at all, in a postconviction proceeding.

## BACKGROUND

¶ 2 In February 2004, the State charged Defendant with ten counts of sexual exploitation of a minor, second degree felonies, *see* Utah Code Ann. § 76–5a–3(1)(a), (2) (2008), after Defendant was found in possession of child pornography. Following plea negotiations, Defendant pled guilty to two counts of sexual exploitation of a minor. In exchange, the State dropped the other eight counts and "agree[d] to a two-level reduction of the offenses from a second degree felony to a Class A misdemeanor, pursuant to" the 2003 reduction statute that was then in effect, and which did not preclude reductions for convictions requiring sex offender registration. *See id.* § 76–3–402 (2003). The State's agreement to stipulate to such a reduction was, of course, conditioned on Defendant successfully completing his probation. *See id.* § 76–3–402(2)(b), (3). Defendant acknowledged in his plea agreement that he "kn[e]w that any charge or sentencing concession or recommendation of probation or suspended sentence, including a reduction of the charges for sentencing ... [was] not binding on the judge."

¶ 3 The trial court accepted Defendant's guilty plea and entered his convictions for two second degree felonies, i.e., two counts of sexual exploitation of a minor, in July 2004. Two months later, the court sentenced Defendant to two indeterminate prison terms of one to fifteen years, to run consecutively. It then suspended the prison terms. The court also sentenced Defendant to two ninety-day jail terms to be served concurrently, but it later modified the sentence to thirty days, with credit for the time Defendant had already served. Finally, the court placed Defendant on probation for thirty-six months and ordered him to pay a $2000 fine. The court imposed several probation conditions, including submission to drug testing, submission to random computer screenings, and completion of a sex offender treatment program.

¶ 4 From all that appears, Defendant was a model probationer. In April 2006, about halfway through his probationary term, Adult Probation and Parole informed the trial court that Defendant had completed the terms of his probation and recommended early termination of probation. The court ruled that Defendant needed to serve the full statutory term of his probation, which Defendant thereafter successfully completed in August 2007. In April 2008, Defendant moved for a reduction of his offenses pursuant to the plea agreement. Because the reduction statute had been amended in July 2006 so as to foreclose a court's discretion to reduce the degree of offense for convictions that required sex offender registration, *see id.* § 76–3–402(6) (Supp. 2006), including for the crime of sexual exploitation of a minor, *see id.* § 77–27–21.5(1)(e)(i)(O) (2003),[3] the trial court denied Defendant's motions to reduce his convictions by two degrees and to compel the State to perform its obligations under the plea agreement. Defendant now appeals.

## ISSUES AND STANDARDS OF REVIEW

¶ 5 Defendant first claims his due process rights were violated under the Utah and

---

**3.** The sex offender registration statute in effect at the time of Defendant's plea did not require that Defendant register for life for the crime of sexual exploitation of a minor. *See* Utah Code Ann. § 77–27–21.5(9)(b) (2003). A subsequent amendment, however, requires lifetime registration. *See id.* § 77–27–21.5(12)(c)(i)–(ii)(G) (Supp.2009).

United States constitutions when the district court determined that the 2006 reduction statute, which Defendant urges is an ex post facto law, applied and precluded the court from granting his motion to reduce. Second, Defendant asserts that in applying the 2006 reduction statute, and in therefore not requiring the State to fulfill the promises it made in the plea agreement, the 2006 reduction statute impaired the obligation of contracts in violation of the Utah and United States constitutions.[4]

■ ¶ 6 Typically, a district court has "wide latitude and discretion in" determining whether to reduce the degree of an offense, and we only set aside "a sentence ... if we find it is 'inherently unfair or clearly excessive.'" *State v. McGee*, 2001 UT 69, ¶ 6, 31 P.3d 531 (citation omitted). The trial court's decision to deny Defendant's motion to reduce, and the arguments raised on appeal, however, require a determination of whether application of the 2006 reduction statute to Defendant violated various constitutional provisions, which present questions of law that we review for correctness. *See State v. Norcutt*, 2006 UT App 269, ¶ 7, 139 P.3d 1066.

## ANALYSIS

### I. The 2006 Reduction Statute Is Not an Ex Post Facto Law.

■ ¶ 7 Defendant argues that the 2006 reduction statute is an ex post facto law because its retroactive application "effectively increases the magnitude of the punishment for [Defendant] and aggravates his offense because it deprives him of the reduction of his convictions and attendant consequences, which induced him to enter his pleas." The Utah and United States constitutions prohibit the passing of any ex post facto law, *see* U.S. Const. art. I, § 10, cl. 1; Utah Const. art. I, § 18, and the United States Supreme

Court has identified four categories of criminal laws that constitute ex post facto laws, two of which are relevant here:[5] (1) "Every law that *aggravates a crime*, or makes it *greater* than it was, when committed"; and (2) "[e]very law that *changes the punishment*, and inflicts a *greater punishment*, than the law annexed to the crime, when committed." *State v. Marshall*, 2003 UT App 381, ¶ 10, 81 P.3d 775 (emphases in original) (quoting *Carmell v. Texas*, 529 U.S. 513, 522, 120 S.Ct. 1620, 146 L.Ed.2d 577 (2000)) (additional citation omitted), *cert. denied*, 90 P.3d 1041 (Utah 2004).

¶ 8 The 2006 reduction statute is not an ex post facto law for two reasons. First, the amendments did not aggravate the crime or increase the criminal penalty—as those terms have been construed—for which Defendant was convicted. And second, there was no retroactive application of a new law to Defendant given that case law existing at the time of Defendant's plea provided that it is the reduction statute in effect at the time a probationer moves to reduce that is applicable.

### A. Underlying Crime and Criminal Penalty Unchanged

¶ 9 As previously indicated, a law will be considered an ex post facto law if it retroactively aggravates a crime or increases criminal penalty. *See California Dep't of Corrs. v. Morales*, 514 U.S. 499, 504–05, 115 S.Ct. 1597, 131 L.Ed.2d 588 (1995); *Marshall*, 2003 UT App 381, ¶ 10, 81 P.3d 775. The 2006 reduction amendments clearly did not alter the sexual exploitation of a minor statute, did not change the statutory designation of sexual exploitation of a minor as a second degree felony, and did not alter the terms of Defendant's sentence. *See* Utah Code Ann. § 76-3-402 (Supp.2006) (prohibiting a reduction for offenses that require a

---

4. As indicated, in relation to both issues Defendant claims his state and federal constitutional rights were violated. However, because he did not urge separate grounds for violation of his Utah constitutional rights, the issues are analyzed together and the state claims are not separately addressed. *See State v. Harris*, 2004 UT 103, ¶ 23, 104 P.3d 1250; *State v. Calliham*, 2002 UT 86, ¶ 32 n.8, 55 P.3d 573.

5. The other two categories deal with laws that previously had not criminalized the relevant conduct and laws that affect the rules of evidence. *See State v. Marshall*, 2003 UT App 381, ¶ 10, 81 P.3d 775, *cert. denied*, 90 P.3d 1041 (Utah 2004).

sex offender to register but not specifically addressing sexual exploitation of a minor); *id.* § 76–5a–3 history & amendment notes (Supp. 2009) (indicating statute defining sexual exploitation of minor, including its designation as a second degree felony, was not amended between 2001 and 2009); *id.* § 76–3–203 history note (2008) (indicating statute setting prison term for second degree felonies has not been amended since 2003).

¶ 10 What the 2006 reduction amendments did change was the district court's previous discretion to reduce the level of offense for convictions that required defendants to register as sexual offenders *if a defendant's behavior during the probationary period* justified such action. *Compare* Utah Code Ann. § 76–3–402 (2003), *with id.* § 76–3–402(6) (Supp.2006). *See State v. Shipler,* 869 P.2d 968, 970 n. 6 (Utah Ct.App.1994) (addressing defendant's argument that the reduction statute in effect at the time of sentencing, not at the completion of probation, applied; noting "the issue . . . is not whether the initial sentence was appropriate [but] whether defendant's performance on probation justifies a reduction in her record of conviction"; and stating the 1991 amendments went "not to defendant's sentence but rather to circumstances that may have arisen at the completion of her sentence"). *See also State v. Anderson,* 2009 UT 13, ¶¶ 15, 21, 203 P.3d 990 ("defin[ing] probation as an act of grace by the court suspending the imposition or execution of a convicted offender's sentence upon prescribed conditions" and that probation is a type of a sentence) (citation and internal quotation marks omitted). But the four categories of ex post facto laws do not include laws relating to behavior during a probationary period.[6] *See Marshall,* 2003 UT App 381, ¶ 10, 81 P.3d 775.

¶ 11 The 2006 reduction statute did not aggravate, or increase the penalty for, the crime of sexual exploitation of a minor. Defendant's prospects for a reduction were not based on his criminal conduct leading to his conviction for sexual exploitation of a minor and ensuing sentence, but were based on his good behavior during probation, which certainly does not fall within the four recognized categories of ex post facto laws. *See id.*

¶ 12 We agree with Defendant that the 2006 reduction statute clearly worked to his disadvantage and forces him to face consequences that he had hoped to avoid in entering his plea. Most important to Defendant, he will now be required to register as a sex offender as a result of his convictions not being reduced to class A misdemeanors. But being required to face such a consequence now does not mean the 2006 reduction statute increased the criminal penalty of the crime for which he was convicted because that civil consequence[7] was always legally required, given the crime for which he was convicted, and was always a possibility even if the prosecution *recommended* a two-level reduction to the court. The 2006 reduction statute, then, simply is not an ex post facto law.

B. Retroactive Application

¶ 13 This conclusion is reinforced when the case is viewed from another perspective. A basic precept of ex post facto jurisprudence is that to trigger judicial concern and possibly intervention, a new law must be applied *retroactively* to a defendant in a way that is unfair and deprives him of

---

6. The United States Supreme Court has previously overruled cases that impermissibly expanded the four categories of ex post facto laws. *See, e.g., Collins v. Youngblood,* 497 U.S. 37, 47–52, 110 S.Ct. 2715, 111 L.Ed.2d 30 (1990), *overruling Kring v. Missouri,* 107 U.S. 221, 235–36, 2 S.Ct. 443, 27 L.Ed. 506 (1883) (characterizing provision of state's new constitution as an ex post facto law because it "alter[ed] the situation to [the defendant's] disadvantage").

7. Registration as a sex offender is not considered a "criminal penalty," but rather a civil penalty, and therefore retroactive application of amendments to sex offender registration laws have been ruled to not violate the Ex Post Facto Clause. *See Smith v. Doe,* 538 U.S. 84, 91–92, 96–103, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003); *id.* at 105–06, 123 S.Ct. 1140 (Kennedy, J., concurring); *Femedeer v. Haun,* 227 F.3d 1244, 1253 (10th Cir.2000) (determining Utah's sex offender notification scheme is civil in nature and not impermissible under ex post facto jurisprudence). The State provided a persuasive argument that the reduction statute itself is civil, not criminal, in nature and thus outside the reach of ex post facto prohibitions. In view of our disposition, it is not necessary to reach this issue.

certain constitutional rights. *See California Dep't of Corrs. v. Morales,* 514 U.S. 499, 504, 115 S.Ct. 1597, 131 L.Ed.2d 588 (1995) ("[T]he [Ex Post Facto] Clause is aimed at laws that 'retroactively alter the definition of crimes or increase the punishment for criminal acts.'") (citations omitted); *Spanish Fork W. Field Irrigation Co. v. District Court,* 99 Utah 527, 104 P.2d 353, 360 (1940) ("Every ex post facto law must necessarily be retrospective, but every retrospective law is not necessarily an ex post facto law; and so retrospective laws in so far as they are ex post facto laws are prohibited."). In *State v. Shipler,* 869 P.2d 968 (Utah Ct.App.1994), although not specifically addressing whether application of the then newly amended 1991 reduction statute violated the Ex Post Facto Clause, this court determined that the amended reduction statute was not a retroactive law because it did not take away any of the defendant's vested rights under the previous statute. *See id.* at 971.

¶ 14 The *Shipler* defendant had moved for a second reduction of her offense after completing probation. *See id.* at 969. During her probation, in 1991, the reduction statute was amended to allow a second reduction only if the State consented. *See id.* at 969–70. *See also* Utah Code Ann. § 76–3–402(3) & amendment notes (Cum. Supp. 1991). The trial court applied the 1990 version of the reduction statute but still declined to allow a second reduction, on other grounds. *See Shipler,* 869 P.2d at 969. On appeal to this court, the parties disputed, among other things, which version of the reduction statute applied to the defendant, and the court determined that the 1991 version applied. *See id.* at 969–71. The *Shipler* court reasoned that under established law, "the substantive law to be applied throughout an action is the law in effect at the date the action *was initiated.*" *Id.* at 970 (emphasis in original) (citation and internal quotation marks omitted). It further stated that vested "rights accrue only when the prerequisites for filing an action are fulfilled" and "that a right is not 'vested' until it is something more than such a mere expectation as may be based upon an anticipated continuation of the present laws." *Id.* (citation and additional internal quotation marks omitted).

¶ 15 Because the *Shipler* defendant's motion to reduce could not be considered until after she had successfully completed probation, under either version of the relevant reduction statutes, the court concluded that she had no vested right to application of the 1990 version of the reduction statute. *See id.* at 970–71. In addressing the defendant's argument that application of the 1991 reduction statute caused "'serious procedural deficiencies and notice violations,'" the *Shipler* court determined that the 1991 reduction statute was not a retroactive law because the law in effect at the time a probationer moves for a reduction after successfully completing probation applies—not the statute in effect at the time of sentencing. *See id.* at 971.

¶ 16 Under *Shipler,* and given that under Defendant's plea bargain the State's agreement to a reduction was conditioned on his successful completion of probation, Defendant was always only entitled to have the statute in effect at the time he successfully completed his probation applied to him. Because the 2006 reduction statute was in effect at the time Defendant completed his probation, that statute was not applied retroactively and its application to Defendant does not implicate the Ex Post Facto Clause.

¶ 17 Defendant attempts to distinguish *Shipler* by arguing that *Shipler* did not involve a State promise, memorialized in a plea agreement, to stipulate to a two-level reduction of the offense upon successful completion of probation. He claims that any right he had to a reduction vested at the time the guilty plea was accepted by the court.

¶ 18 Although Defendant argues that his case is distinguishable based on the fact that he was promised a reduction recommendation in a plea agreement, as the State pointed out at oral argument this distinction does not undermine *Shipler*'s holding that the statute in effect at the time a probationer is capable of moving for a reduction applies, but rather goes to the voluntariness of Defendant's plea. Moreover, the plea agreement conditioned the State's obligation to recommend a two-level reduction on Defendant's successful completion of probation. In so doing, the plea agreement basically incorporated lan-

guage from the 2003 version of section 76–3–402, which then and in 2006, provided that a court could reduce a conviction after staying a sentence and placing a defendant on probation if the defendant successfully completed probation, *see* Utah Code Ann. § 76–3–402(2)(b) (2003 & Supp.2006). And in any event, when employing contract principles as Defendant urges, Defendant's successful completion of probation would be considered a condition precedent to any State obligation and, thus, Defendant had no right to seek the State's compliance with its agreement until he completed probation. *See Miller Family Real Estate, LLC v. Hajizadeh,* 2008 UT App 475, ¶ 4 n.3, 200 P.3d 213 ("A condition precedent is 'an act or event, other than a lapse of time, that must exist or occur before a duty to perform something promised arises.' ") (citation omitted). Thus, it cannot be concluded that Defendant's rights vested at the time the guilty plea was entered because the State's promise to agree to a two-level reduction was always conditioned on successful completion of probation.

¶ 19 Defendant argues in the alternative that *Shipler* does not apply because his probation was completed before the 2006 reduction statute went into effect. He bases this argument on Adult Probation and Parole's recommendation of early termination of probation in April 2006, a recommendation that the district court specifically rejected. Defendant's right to have the State recommend a reduction, which was always based on successfully completing probation, could not have vested at the point in time when termination of his probation was only recommended and when he was still required to continue probation for another year and a half.

## II. The Contracts Clause Does Not Bar Application of the 2006 Reduction Statute.

■ ¶ 20 We also do not accept Defendant's theory that applying the 2006 reduction statute to him violated his rights under the state and federal Impairment of Contracts clauses. *See* U.S. Const. art. I, § 10, cl. 1 ("No State shall … pass any bill of attainder, ex post facto law, or law impairing

the obligation of contracts[.]"); Utah Const. art. I, § 18 ("No bill of attainder, ex post facto law, or law impairing the obligation of contracts shall be passed."). The state and federal impairment of contracts clauses "do not establish a right of parties to make contracts that are illegal and against public policy. They merely prevent 'impairment' by a changing of the laws *after* the contract has been made." *Beehive Med. Elecs., Inc. v. Industrial Comm'n,* 583 P.2d 53, 61 (Utah 1978) (emphasis in original).

¶ 21 First, the premise of Defendant's argument, that plea bargains clearly fall within the reach of the Impairment of Contracts clauses, may surely be questioned. Such skepticism is strengthened by the fact that Defendant has not called our attention to a single criminal case that has applied impairment of contracts analysis to a plea agreement. While Utah courts and the United States Supreme Court have recognized that plea bargains have contract-like characteristics, including the exchange of promises or bargained for consideration, we have explicitly cautioned against "blindly incorporat[ing contract principles] into the criminal law in the area of plea bargaining." *State v. Patience,* 944 P.2d 381, 387 (Utah Ct.App.1997) (citation and internal quotation marks omitted). *See also Maryland v. Parker,* 334 Md. 576, 640 A.2d 1104, 1114–19 (1994) (discussing problems associated with being called upon to enforce plea bargains that contain promises that cannot legally be fulfilled and agreeing that "contract principles alone will not suffice" because "[t]he bounds of plea agreement and contract law are not coterminous" and courts "may determine what is fair in the circumstances by reference to public policy considerations outside the law of contract") (alteration in original) (citation and internal quotation marks omitted).

■ ¶ 22 It is unnecessary, however, to decide whether plea agreements must be regarded as contracts subject to the Impairment of Contracts clauses. Even accepting Defendant's premise that contract principles apply, employing contract principles does not support a conclusion that Defendant was constitutionally entitled to application of the 2003 version of the reduction statute. As

acknowledged by Defendant, contracts are deemed to implicitly incorporate laws existing at the time a particular contract is entered. *See Beehive Med. Elecs.*, 583 P.2d at 60 ("It has always been recognized that a contract contains, implicitly, the laws existing at the time it is completed."). Although the 2003 reduction statute was in effect at the time of Defendant's plea bargain, the case of *State v. Shipler*, 869 P.2d 968 (Utah Ct.App. 1994), had also been decided as of that time, and *Shipler* held that the statute in effect when a probationer was capable of moving for a reduction, not the one in effect at sentencing, would apply. *See id.* at 970–71. Thus, the law in effect at the time the "contract" was entered into fully contemplated the possibility that the law could change during the years that Defendant was on probation and that any such new law would apply to him if he had not successfully completed probation before the new law took effect. *See id.*[8]

¶ 23 Moreover, and importantly, the promises made in the plea agreement were the State's alone, and Defendant's plea agreement acknowledged that any promises by the State were not binding on the court. Although the court accepted Defendant's plea that embodied the agreement of the parties, the court made no promise that it would actually reduce his convictions or even consider a reduction of his convictions. Approving an agreement containing promises by both the State and Defendant does not mean that the court thereby accepted, or had imposed upon it, an obligation to itself fulfill such promises.

III. Appropriate Remedy for the State's Failure to Fulfill Its Promises Under the Plea Bargain.

¶ 24 Although Defendant's primary arguments are rejected for the reasons discussed above, Defendant is not completely without remedy. *See Santobello v. New York*, 404 U.S. 257, 262–63, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971) (leaving the proper remedy for a state's failure to fulfill its promises under a plea bargain to the states and suggesting that specific performance or withdrawal of the plea are potential remedies, based on the circumstances of the case).[9] If

---

8. *State v. Shipler*, 869 P.2d 968 (Utah Ct.App. 1994), was not based on contract-vesting principles but rather on when a vested right arose under the law. *See id.* at 970–71. However, as previously discussed, where the plea agreement itself basically incorporated the statutory requirement that probation be successfully completed before a defendant would have a right to move for a reduction, and clearly conditioned the State's obligation to perform on Defendant's successful completion of probation, *Shipler* still applied to Defendant's situation, was implicitly incorporated into the terms of the plea agreement, and mandated application of the reduction statute in effect at the time Defendant successfully completed his probation.

9. Even if Defendant was clearly entitled to a remedy for the State's failure to fulfill its promises, this case presents an unusual factual situation where specific performance is not a viable option. *See Maryland v. Parker*, 334 Md. 576, 640 A.2d 1104, 1116–17 (1994) (concluding that specific performance was not an option). As this decision holds that neither the Ex Post Facto Clause nor Impairment of Contracts clauses require the district court to apply the reduction statute in effect at the time Defendant entered his plea, it is not appropriate to order the court to do so, especially given the lack of any demonstrated inherent power the trial court would have, absent legislative direction, to reduce the level of conviction. *Cf. State v. Green*, 757 P.2d 462, 464

(Utah 1988) ("[J]udges may exercise sentencing discretion within those limits established by the legislature; the power to fix sentencing limits and the power to suspend sentence in favor of probation are not inherent in the judiciary but must be authorized by statute. Similarly, the power to revoke probation must be exercised within legislatively established limits.").

And if we ordered the State to make the recommendation, we would be asking the State to urge a position that is not supported by law. As the trial court recognized, requiring the State to make the recommendation would be futile when the court would disregard it. In *Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971), the United States Supreme Court indicated that even though the trial court had already noted that any sentencing recommendation by the State would not affect its decision, a remand was still appropriate for the trial court to consider whether specific performance or withdrawal of the plea was the appropriate remedy. *See id.* at 262–63, 92 S.Ct. 495. This case is factually distinct because *Santobello* did not involve a recommendation to apply a statute that the court could not legally apply. *See id.*

As concerns withdrawal of the plea as a remedy, Defendant admits that any request to withdraw his plea based on the State's "breach" would ordinarily need to be pursued in a post-conviction petition. If withdrawal is truly a rem-

Defendant lacked *actual* knowledge that a new variant of the reduction statute might end up applying to him, it may well be that his guilty plea was not entered knowingly and voluntarily. But because, as Defendant concedes, he failed to seek withdrawal of his plea prior to sentencing and never appealed his conviction, *see* Utah Code Ann. § 77–13–6(2)(c) (2008), the only avenue now available to him to seek to withdraw the plea is through a postconviction proceeding pursuant to rule 65C of the Utah Rules of Civil Procedure, *see* Utah R. Civ. P. 65C, and the Post Conviction Remedies Act, *see* Utah Code Ann. § 78B–9–102 (2008).

## CONCLUSION

¶ 25 We affirm the trial court's application of the 2006 reduction statute to Defendant and its ruling not to reduce Defendant's convictions by two degrees. The 2006 reduction statute did not violate the Ex Post Facto Clause of either the Utah or United States constitutions. We also hold that the contract clauses do not require the trial court to consider a reduction under the 2003 reduction statute. We recognize that the 2006 reduction amendments did disadvantage Defendant because the amended statute requires him to face consequences he sought to avoid in entering his plea, but any remedy based on such disadvantages and the State's inability to fulfill its promises needs to be pursued in a postconviction proceeding.

¶ 26 WE CONCUR IN THE RESULT: JAMES Z. DAVIS, Presiding Judge, and RUSSELL W. BENCH, Senior Judge.

edy for the State's "breach," whether voluntariness analysis is still necessary to withdraw is not entirely clear under the Supreme Court's direction in *Santobello*. *See id.* (indicating only that the court should evaluate the circumstances of the case to see whether specific performance or an opportunity for withdrawal of the plea was the appropriate remedy).